# IN THE CIRCUIT COURT OF DODDRIDGE COUNTY, WEST VIRGINIA

**RICHARD L. ARMSTRONG, and**
**DONALD R. REYNOLDS,**

    **Plaintiffs,**

    v.

**ANTERO RESOURCES CORPORATION,**

    **Defendant.**

Civil Action No.: 19- C -17, 18

DODDRIDGE COUNTY
CIRCUIT COURT

AUG 06 2019

MICHELE D. BRITTON
CIRCUIT CLERK

## COMPLAINT

  Plaintiffs Richard L. Armstrong and Donald R. Reynolds, by and through their undersigned counsel, William E. Ford III, hereby set forth their Complaint as follows:

### I. PARTIES

1. Plaintiff Richard L. Armstrong ("Plaintiff Armstrong") is a resident and a citizen of Harrison County, West Virginia.

2. Plaintiff Donald R. Reynolds ("Plaintiff Reynolds") is a resident and a citizen of Harrison County, West Virginia.

3. Defendant Antero Resources Corporation ("Defendant Antero") is a Delaware corporation with its principal office address at 1625 17th Street, Suite 300, Denver, Colorado 80202 and it does business in Doddridge County, West Virginia.

4. Defendant Antero Resources Corporation is registered with the Office of the West Virginia Secretary of State as a foreign corporation and its agent for service of process is CT Corporation System, 1627 Quarrier St, Charleston, West Virginia 25311-2124.

5. Plaintiffs individually own a one-sixteenth (1/16) interest in the oil and gas interests underlying two tracts of farm and wooded property of approximately 545 Acres and 60 Acres

situate on the waters of Nutters Fork, in West Union Magisterial District, Doddridge County, West Virginia as described in that certain deed dated August 27, 1951 from J. F. Summers, Trustee of the Estate of Joseph Freeman, to Truman Gore, Fitzhugh Reynolds, and others, and of record in the Office of the Clerk of the County Commission of Doddridge County, West Virginia in Deed Book 121 at Page 151.

6.      Fitzhugh Reynolds died on November 7, 1970 and by Will recorded in Will Book 9 at Page 556 he devised his oil and gas interests to his widow Kate Harding Reynolds and his children Thomas G. Reynolds and Peggy Armstrong in equal shares.

7.      Kate Harding Reynolds died on July 22, 1984 and by Will recorded in Will Book 104 at Page 393 left her children Thomas G. Reynolds and Peggy Armstrong as her heirs in equal shares.

8.      Thomas G. Reynolds died on February 2, 1986 and by Will record in Will Book 108 at Page 334 and left as his residuary heir his wife, Thelma Marie Reynolds.

9.      By deed dated August 6, 1987, and recorded in Deed Book 203 at Page 355 T. Marie Reynolds conveyed her interests in the subject real estate to Donald R. Reynolds.

10.     Peggy Armstrong died on July 6, 2012 and by Will recorded in Will Book 173 at Page 866 she left as her sole heir her husband Eugene Armstrong.

11.     Eugene Armstrong died on July 6, 2015 and by Will recorded in Will Book 187 at Page 866 he left as his sole heir his son husband Plaintiff Richard L. Armstrong.

## II.     LEASE CHAIN OF TITLE

12.     Joseph Freeman and Flora Freeman, his wife, predecessors in title to Plaintiffs' leasehold, entered into an oil and gas Lease dated April 15, 1913 and recorded said Clerk's Office in Lease

2

Book 27 at Page 233 with G. H. Trainer and J.E. Trainer ("Freeman Leasehold") for the "1st Tract 540 Acres more or less and 2nd Tract 60 Acres more or less, aggregating 600 acres, more or less, with "1/8 part of all oil produced and saved from the leased premises; and 2nd to pay One Hundred ($100.00) each three months in advance for the gas from each and every gas well drilled on said premises, the product from which is marketed and used off the premises, said payment to be made on each well within sixty days after completion of well and to be paid three months thereafter while the gas from said well is used." (hereinafter referred to as "Freeman Lease" a copy of which is attached hereto as Exhibit A)

13. By Deed and Agreement dated February 23, 1917 and recorded in Lease Book 34 at Page 247 , George G. Trainer and Viola C.D. Trainer, his wife and J.E. Trainer and Tressie May Trainer, his wife, and George H. Trainer and J.E Trainer, partners, trading under the firm name of Sun Gas Company, transferred and assigned to W. W. Hepburn 63 leases, including Lease No. 47 for the Joseph Freeman 540 and 60 acres tracts.

14. By Deed and Agreement dated February 23, 1917 and recorded in Lease Book 34 at Page 256, W. W. Hepburn transferred and assigned to Eastern Petroleum Company 63 leases, including Lease No. 47 for the Joseph Freeman 540 and 60 acres.

15. By Agreement dated March 18, 1925, Joseph Freeman and Flora Freeman with G. H. Trainer and J.E. Trainer, and the then current assignee of the Freeman Lease, Clifton Oil and Gas Company, modified the oil and gas Lease dated April 15, 1913 (hereinafter referred to as "Freeman Lease Modification" a copy of which is attached hereto as Exhibit B) by changing the compensation and related terms provided in the lease dated April 15, 1913 wherein it was amended as follows, in pertinent part:

3

"NOW, THEREFORE, in consideration of the premises, it is agreed by and between the parties hereto that from and after the second date hereof, the party of the second part shall pay and deliver unto the parties of the first part, as full consideration for the gas from each and every gas well which may be hereafter drilled upon said premises, and from all the oil wells now drilled upon said premises, or which may be hereafter drilled upon said premises, the equal one-eighth (1/8) part of all the natural gas which may be produced and marketed from said wells, or any of them, both gas wells and oil wells, (except the two gas wells now producing gas on said premises), so long as the party of the second part, its successors or assigns, shall market the gas from said wells, or any of them, off the premises.

It is further agreed by and between the parties hereto, that the parties of the first part shall sell to the party of the second part and that the party of the second part shall purchase from the parties of the first part all the said one-eighth of the said gas produced and marketed from said premises, at the same price and upon the same terms and conditions as all the gas from said leased premises is now being marketed, or shall be hereafter marketed by the party of the second part, its successors or assigns; and settlement shall be made monthly, on or before the last day of every month, for the said royalty gas delivered to the credit of the parties of the first part during the preceding month; and the party of the second part shall also furnish to the parties of the first part a true and correct statement of the entire amount of gas produced and saved from said leased premises during the preceding month, except the said two gas well which are now producing gas, which are not included in this agreement.  And in the event the parties of the first part are not satisfied with such statements of amount of gas delivered and sold from said premises, the parties of the first part, by themselves or their agent, shall have the right of access for and inspection of the original meter charts taken from said wells; and they may also inspect the statements furnished by the Company that purchases all the gas from said wells. Second party shall pay for all gas used by it off said premises...."

16.    By Deed and Assignment dated June 28, 1948 and recorded in Lease Book 56 at Page165

Clifton Oil and Gas Company transferred to Quaker State Oil Refining Corporation various

leaseholds including the Joseph Freeman 540 and 60 acres leasehold.

17.    By Assignment dated February 12, 1986 and recorded in Lease Book 145 at Page 492,

HND Oil & Gas Company transferred to Quaker State Oil Refining Corporation all right, title

and interest in all formations lying 50 feet below the Gordon formation in  575 acre Joseph

Freeman Lease.

4

18.     By Assignment dated February 12, 1986 and recorded in Lease Book 145 at Page 495, J D & M Investments, Inc transferred to Quaker State Oil Refining Corporation all right, title and interest in all formations lying 50 feet below the Gordon formation in 575 acre Joseph Freeman Lease.

19.     By Assignment dated May 30, 1986 and recorded in Lease Book 146 at Page 692, HND Oil & Gas Company transferred to Quaker State Oil Refining Corporation all right, title and interest in all formations lying 50 feet below the Gordon formation in 575 acre Joseph Freeman Lease.

20.     By Assignment dated January 22, 1990 and recorded in Lease Book 159 at Page 474, Quaker State Corporation (fka Quaker State Oil Refining Corporation) transferred to QSE&P, Inc. all right, title and interest in all formations lying 50 feet below the Gordon formation in the Joseph Freeman Lease.

21.     By Assignment, Conveyance and Bill of Sale dated August 8, 1995 and recorded in Lease Book 175 at Page 466, Quaker State Corporation, QSE&P, Inc., Quaker State 1986-2 Drilling Fund, L,P, Quaker State 1987-1 Drilling Fund, L.P., Quaker State 1988-1 Drilling Fund, L.P., and Quaker State 1989-1 Drilling Fund, L.P. transferred to Belden & Blake Corporation all right title and interest in the Joseph Freeman Lease Inc.

22.     By Assignment, Conveyance and Bill of Sale dated December 1, 1996 and recorded in Lease Book 181 at Page 114, Belden & Blake Corporation conveyed to Peake Energy, Inc. all its right , title and interest in that conveyed in LB 175 at Page 466, including the Joseph Freeman Lease.

23.     By Assignment, Conveyance and Bill of Sale dated December 21, 2012 and recorded in

5

Lease Book 285 at Page 84, EXCO Production Company, EXCO Resources, LLC, and BG

Production Company transferred to Antero Resources Appalachian Corporation (now known as

Antero Resources Corporation) various leaseholds in Doddridge County including the Joseph

Freeman Lease.

24.     The aforesaid Assignment, Conveyance and Bill of Sale, Defendant Antero as Assignee

agreed on page 3 as follows:

## "ASSUMED OBLIGATIONS

Without limiting Assignee's rights under the special warranty of title set forth above,
Assignee hereby assumes and agrees to fulfill, perform, pay and discharge (or cause to be
fulfilled, performed, paid or discharged) all of the Assumed Liabilities and the Assumed
Environmental Liabilities."

25.     According to the Declarations of Pooling filed by Defendant Antero with the Office of the

Clerk of the County Commission of Doddridge County, West Virginia, the Freeman Leasehold is

a part of the Chalk,  Michels, Warrior, Buffett, Jimmy Smithers, Taunus Units.

26.     According to the West Virginia Department of Environmental Protection, Oil and Gas

Division, website, Defendant Antero has been producing oil and gas from the following wells

operating since at least July 2018:

        Michels Unit Well 1H    API  #47-017-06811

        Warrior Unit Well 1H    API  #47-017-06828

27.     According to the West Virginia Department of Environmental Protection, Oil and Gas

Division, website, Defendant Antero has been producing oil and gas from the following wells

operating since at least August 2018:

        Michels Unit Well 2H    API  #47-017-06812

6

Warrior Unit Well 2H    API #47-017-06808

28.    According to the West Virginia Department of Environmental Protection, Oil and Gas

Division, website, Defendant Antero has been producing oil and gas from the following wells

operating since at least October 2018:

Chalk Unit Well 1H     API #47-017-06818

Chalk Unit Well 2H     API #47-017-06819

29.    According to the West Virginia Department of Environmental Protection, Oil and Gas

Division, website, Defendant Antero has been producing oil and gas from the following wells

operating since at least November 2018:

Buffett Unit Well 1H    API #47-017-06847

Buffett Unit Well 2H    API #47-017-06848

Taunus Unit Well 1H    API #47-017-06840

Taunus Unit Well 2H    API #47-017-06841

Taunus Unit Well 3H    API #47-017-06842

Smithers Unit Well 1H  API #47-017-06845

Smithers Unit Well 2H  API #47-017-06844

Jimmy Unit Well 1H     API #47-017-06838

Jimmy Unit Well 2H     API #47-017-06790

Jimmy Unit Well 3H     API #47-017-06839

30.    By letter dated April 12, 2019 from counsel for the Plaintiffs to Plaintiff Antero, Plaintiffs

made demand for payment of royalties and documentation supporting their calculations. (See

copy of letter attached hereto as Exhibit C).

7

31.    To date, Plaintiffs have not been paid royalties. In response to a request by letter dated

May 17, 2019 to Defendant Antero requesting documentation supporting its royalty calculations,

Defendant Antero responded that the payment provisions of the 1913 Freemand Lease and the

1925 Lease Modification were no longer applicable.   (See copy of letter attached hereto as

Exhibit D)

32.    Plaintiffs seek specific performance by Defendant Antero of the lease payment provisions

of the lease contract among royalty owners of the Freeman Leasehold and Defendant Antero as

described above, specifically:

> "And in the event the parties of the first part are not satisfied with such statements of
> amount of gas delivered and sold from said premises, the parties of the first part, by
> themselves or their agent, shall have the right of access for and inspection of the original
> meter charts taken from said wells; and they may also inspect the statements furnished by
> the Company that purchases all the gas from said wells. "
>
> (See Exhibit B, ¶ 4)

33.    Plaintiffs have performed all obligations pursuant to the subject Lease Agreements and

Modification of Oil and Gas Lease.

34.    Defendant Antero has breached the terms of the Lease Agreements by failing to pay

Plaintiffs the royalties they are owed from the production of the wells described above in ¶¶ 26-

29 above.

35.    Defendant Antero has breached the terms of the Lease Agreements by refusing the

request made to Defendant Antero by letter of April 19, 2019 requesting it provide

documentation supporting its calculations of production from  the wells described above in ¶¶

26-29 above.

36.    Defendant Antero had an affirmative duty to pay to Plaintiffs the true and correct royalty

8

due them by virtue of the Freeman Lease and Freeman Lease Modification and/or by virtue of the

duty of good faith and fair dealing in all contracts under West Virginia common law, and by

virtue of the fiduciary duty and responsibility of the lessee in any oil and gas lease who assumes

the duty of handling the sales and accounting functions of the parties.

37.     At all times since Defendant Antero began producing oil and gas from the subject wells,

it was required to pay the royalties due to Plaintiffs within 60 days of production and to provide

to Plaintiffs documentation of sales upon request, which duties Defendant Antero has violated.

38.     Pursuant to West Virginia Code § 37C-1-3, Defendant Antero owes Plaintiffs an interest

penalty of the prime interest rate plus an additional two per cent.

39.     Plaintiffs are further entitled to pre-judgment interest for all royalties owed to Plaintiffs

from 30 days of first production as required by the Freeman Lease and Freeman Lease

Modification.

**WHEREFORE**, Plaintiffs Richard L. Armstrong and Donald R. Reynolds respectfully

request that this Court enter Judgment against Defendant Antero Resources Corporation:

A.     Awarding damages for breach of contract in the amount to be determined by the Court;

B.     An Order requiring Defendant Antero to grant the Plaintiffs the right of access for and

       inspection of the original meter charts taken from said wells; and they may also inspect

       the statements furnished by the Company that purchases all the gas from said wells;

C.     Awarding Plaintiff's attorneys' fees, costs and expenses;

D.     Awarding Pre-judgment and post-judgment interest; and

9

E.    Awarding such other and further relief as this Court deems proper and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY FOR ALL ISSUES SO TRIABLE.**

         **RICHARD L. ARMSTRONG and**
         **DONALD R. REYNOLDS**

         **By Counsel**

         William E. Ford III
         (WV State Bar No.1246)

         FORD LAW OFFICE
         217 East Main St.
         Clarksburg, WV  26301
         (304) 626-3116
         Fax (304) 626-3300

         Clarksburgwvlawyer@gmial.com

10

Case 1:19-cv-00173-IMK-MJA  Document 1-1  Filed 09/06/19  Page 11 of 20 PageID #: 17

See Lease Bk. 175 Pg 466   See Lease Bk. 181, Pg 114
See Lease Bk. 146, Pg 692
See Lease Bk. 180. Pg. 200, 622   See Lease Bk. 186, Pg 567
See Lease Bk. 137 Pg

See Real Book 82, Page 323      See Lease Book 32 Page 468      See Bk Bk 103 Pg 428, 464, 468, 471
See Real Book 126, Pg 299       See Lease Book 33, Page 210
                                See Lease Book 34. Page 448     See Lease Book 34, Pg 247, 260
        See Lease Book 56 - Page 170                            See Lease Book 41, Pg 431
See Lease Book 91, Page 321, 371, 396, 400, 409, 431            See Lease Book 69, Page 474
See Lease Book 94, Page 707

**LB 27**

**233**

JOSEPH FREEMAN ET UX    AGREEMENT, Made and entered into this, 15th day of April, 1913,

TO) OIL & GAS LEASE      by and between Joseph Freeman and Flora Freeman, his wife, parties

G.H.& J.E.TRAINER.       of the first part, and G. H. Trainer and J. E. Trainer, parties of the

second part.

WITNESSETH, That the said parties of the first part, for and in consideration of the sum of One Dollar to them in hand well and truly paid by the said parties of the second part, the receipt of which is hereby acknowledged and of the covenants and agreements hereinafter contained on the part of the said parties of the second part, to be paid, kept and performed, have granted, demised, leased and let and by these presents do grant, demise, lease and let unto the said parties of the second part, their heirs and assigns, for the sole and only purpose of mining and operating for oil and gas, and of laying pipe lines, and of building tanks, stations and structures thereon to take care of the said products, all those two certain tracts and parcels of land situate in West Union District, Doddridge County, West Virginia, on the waters of Middle Island Creek, and Nutters Fork, bounded substantially as follows,to-wit:

1st Tract:
On the North by lands of The Philadelphia Co., J. C. Smith et al;

On the East by lands of Frank Smith, Eleazer Freeman et al;

On the South by lands of W. F. Smith, Otho Colemen et al; and

On the West by lands of Walter Smith, S. L. Ford et al; Containing Five Hundred and Forty (540) acres, more or less.

2nd Tract:
On the North by lands of Silas Spencer et al;

On the East by lands of Joseph Corathers et al;

On the South by lands of Eleazer Freeman, John Freeman et al;

On the West by lands of Joseph Smith et al; containing Sixty (60) acres, more or less; the two tracts aggregating Six Hundred Acres, (600), more or less, reserving, however, therefrom three hundred feet around the buildings on the first described tract of land on which no well shall be drilled by either party except by mutual consent.

It is agreed that this lease shall remain in force for the term of five years from this date and as long thereafter as oil or gas, or either of them, is produced from the said land by the said parties of the second part, their heirs and assigns.

In consideration of the premises, the said party of the second part covenants and agrees: 1st- To deliver to the credit of the first parties, their heirs or assigns, free of cost, in the pipe line to which parties of the second part may connect their wells, the equal one-eighth (1/8) part of all oil produced and saved from the leased premises; and 2nd- To pay One Hundred ($100.00) Dollars each three months in advance for the gas from each and every gas well drilled on said premises, the product from which is marketed and used off the premises, said payment to be made on each well within sixty days after completion of well and to be paid each three months thereafter while the gas from said well is used.

Said second party shall not be required in any event to increase the rate of said gas well payments or said royalty of oil by reason of any royalty or interest in said oil or gas that may have been heretofore sold, reserved or conveyed by the first parties or their predecessors in title or otherwise.

Second parties covenants and agrees to locate all wells so as to interfere as little as

Ex A

## 234

possible with the cultivated portions of the farm. And further to complete a well on said premises within three months from the date hereof, or pay at the rate of One Hundred and Fifty Dollars, quarterly in advance, for each additional three months such completion is delayed from the time above mentioned for the completion of such well until a well is completed. All payments may be made direct to first parties, their heirs or assigns, or deposited to their credit in The First National Bank of West Union, W. Va., or by check mailed to Joseph Freeman, at West Union P. O., or in like manner to Joseph Freeman, who is hereby appointed Agent for such purposes.

Lessors may lay a line to any gas well on the said land to take gas free for their own use for heat and light in economical appliances in two dwelling houses and enclosed yard lights on said land at their own risk, subject to the use, operation and right of abandonment of the well by the said second parties; and first parties shall subscribe to and be bound by the reasonable rules and regulations of said second parties, or their assigns, published at such time, relative to such use of gas.

It is agreed and understood that the second party is to complete one well on these premises within four months from this date, or pay to the parties of the first part Four Hundred Dollars, which said sum is to be construed under this agreement as full payment for rental for one gas well for one year from said date, and also in full for rental on one hundred acres of said land for said period; said Four Hundred Dollars to be paid yearly thereafter until a well is drilled.

It is further agreed between the parties hereto that each well drilled upon the said premises shall be in lieu of the rental on one hundred acres of land, only, and that the lessees shall pay the rental on the balance of said land so long as he holds the same or have drilled wells as aforesaid, and that second parties agree to protect farm lines by drilling offset wells.

It is agreed that the second parties are to have the privilege of using sufficient water and gas from the said premises to run all machinery necessary for drilling and operating thereon, and at any time to remove all machinery and fixtures placed on said premises; and further upon the payment of One Dollar and all amounts then due hereunder at any time, by the parties of the second part, their heirs or assigns, to the parties of the first part, their heirs or assigns, said parties of the second part, their heirs and assigns, shall have the right to surrender this lease for cancellation, after which all payments and liabilities thereafter to accrue under and by virtue of its terms shall cease and determine, and this lease become absolutely null and void.

In Witness whereof the parties to this agreement have hereunto set their hands and seals the day and year first above written.

|  |  |
|---|---|
| Joseph Freeman | (Seal) |
| Flora Freeman | (Seal) |
| G. H. Trainer, By J.E.T. |  |
| J. E. Trainer | (Seal) |

State of West Virginia,

Doddridge County, to-wit:

I, U. G. Summers, a Notary Public for said Doddridge County, hereby certify that Joseph Freeman and Flora Freeman, his wife, whose names are signed to the foregoing writing, bearing date on the 15th day of April, 1913, have this day acknowledged the same before me in my said County.

Given under my hand this 16th day of April, 1913.

U. G. Summers, Notary Public.
My Commission expires Oct. 29th, 1919.

State of West Virginia,

Doddridge County, County Clerk's Office, August 21st, 1913.

The foregoing writing and the annexed certificate were this day admitted to record in this office.

Teste: *U. G. Summers* ,Clerk.


J. W. AGNEW

TO) ASSIGNMENT

L. W. BARTLETT.

THIS AGREEMENT, made and entered into this the 21st day of May, 1913, by and between J. W. Agnew, of Clarksburg, West Virginia, party of the first part, and L. W. Bartlett, of Buckhannon, West Virginia, party of the second part.

WITNESSETH, that for and in consideration of the sum of One Dollar and other good and valuable considerations in hand paid, the receipt of which is hereby acknowledged, the said party of the first part does hereby grant, bargain, sell, assign, transfer and set over, and by these presents has granted, bargained, sold, assigned, transferred and set over unto the said party of the second part, his heirs or assigns, an undivided three-sixteenth interest in and to the following described leases for oil and gas purposes, of two tracts of land situate in Greenbrier District, Doddridge County, West Virginia, being more definitely described as follows:

1. Lease from Arminda Sperry and A. L. Sperry, her husband, to H. L. Mathers, dated August 6, 1912, for twenty-two (22) acres, more or less, bounded:

On the North by lands of Nora Chadwell et als;

On the East by lands of M. B. Adams et als;

On the South by lands of S. I. Hickman et als;

On the West by lands of Abraham Hinkle et als.

2. Lease from E. N. Chadwell and W. A. Chadwell, her husband, dated December 6, 1911, for twenty-three acres, more or less, bounded:

On the North by lands of C. C. Freeman;

On the East by lands of Bird Adams;

On the South by lands of Arminda Sperry;

On the West by lands of Abe Hinkle.

To have and to hold the said undivided three sixteenth interest under the rents, covenants and agreements contained in said leases on the part of the lessee therein mentioned to be paid, kept and performed.

To have and to hold unto the party of the second part, his successors or assigns.

It is agreed that the measurement and regulation of said free gas and said excess gas, if any, shall be by meter and regulators set at the tap on the well or line, and that said gas shall be used with economy in safe and proper pipes and appliances, and the user or users of said gas shall subscribe to and be bound by the reasonable rules and regulations of the lessee, not inconsistent herewith, published at such time relating to such use of said gas.

It is further understood that a failure of the lessee to comply with the covenants and agreements herein contained for the payment of rentals and royalties shall render this lease null and void, and that the covenants and agreements in this lease shall apply and be binding upon the heirs, executors, administrators, successors, and assigns of the lessors and lessee, respectively.

WITNESS the following signatures and seals:

Edwin L. Maxwell     (Seal)

Nelle Ray Maxwell     (Seal)

MURPHY OIL COMPANY OF PENNSYLVANIA

By John A. Murphy, President.

(Corporate Seal)

State of West Virginia,

Doddridge County, to-wit:

I, H. L. Hammond, a Notary Public of said county and state do hereby certify that Edwin L. Maxwell and Nelle Ray Maxwell his wife, whose names are signed to the writing above, bearing date the 23rd day of March, 1925, have this day acknowledged the same before me in my said county.

Given under my hand this the 2 day of April, 1925.

My commission expires: October 21, 1929.

(Notarial Seal)              H. L. Hammond, Notary Public.

State of West Virginia,

Doddridge County, County Clerk's Office, May 30, 1925.

The foregoing writing and the annexed certificate were this day admitted to record in this office.

Teste: *Pearl Nutson* ,Clerk.

*See Lease Bk 146, Pg 692*    *See Lease Bk 181, Pg 114*
*See Lease Bk 181, Pg 114*    *See Lease Book 145, Pg 81, 492,49*
*See Lease Book 103 Pgs 108, 114, 118 119 171*   *See Lease Book 56 - Page 170*
*See Lease Bk 160 Pg 622*   *See Lease Bk 186, Pg 567*

JOSEPH FREEMEN ET UX   I    AGREEMENT, Made and entered into this, 18th, day of
TO /// AGREEMENT     I March, 1925, between Joseph Freeman and Flora Freeman, his
CLIFTON OIL & GAS COMPANY I wife, parties of the first part, and the Clifton Oil & Gas
Company, a corporation, party of the second part.

WHEREAS, the parties of the first part are the owners of the oil and gas and oil and gas rights upon and under a tract of Five Hundred and Forty (540) acres of land, situate on the waters of Middle Island Creek, in West Union District, Doddridge County, West Virginia, upon which said tract of land the said parties of the first part executed a lease for oil and gas purposes to G. H. Trainer and J. E. Trainer on the 15th day of April, 1913, which said lease is of record in the office of the Clerk of the County Court of said Doddridge County, in Lease Book No. 27, page 233; and which said lease has passed by assignment to the said party of the second part.

Ex B

*See Lease Book 100, Page 553 —*

WHEREAS, the parties hereto, in order to secure a longer and more profitable operation of oil wells now drilled upon said premises which produce both oil and gas, or which may be drilled hereafter upon said premises, and provide for the saving and marketing of all the gas which may be produced from said premises, desire to change the compensation provided in said lease to be paid to the lessors for the gas from each and every gas well which may be hereafter drilled upon said premises, and the gas which may be produced from the oil wells now drilled upon said premises, or hereafter to be drilled upon said premises.

NOW, THEREFORE, In consideration of the premises, it is agreed by and between the parties hereto that from and after the date hereof, the party of the second part shall pay and deliver unto the parties of the first part, as full consideration for the gas from each and every gas well which may be hereafter drilled upon said premises, and from all the oil wells now drilled upon said premises, or which may be hereafter drilled upon said premises, the equal one-eighth (1/8) part of all the natural gas which may be produced and marketed from said wells, or any of them, both gas wells and oil wells, (except the two gas wells now producing gas on said premises), so long as the party of the second part, its successors or assigns, shall market the gas from said wells, or any of them, off the premises.

It is further agreed by and between the parties hereto, that the parties of the first part shall sell to the party of the second part and that the party of the second part shall purchase from the parties of the first part all the said one-eighth of the said gas produced and marketed from said premises, at the same price and upon the same terms and conditions as all the gas from said leased premises is now being marketed, or shall be hereafter marketed by the party of the second part, its successors or assigns; and settlement shall be made monthly, on or before the last day of every month, for the said royalty gas delivered to the credit of the parties of the first part during the preceding month; and the party of the second part shall also furnish to the parties of the first part a true and correct statement of the entire amount of gas produced and saved from said leased premises during the preceding month, except the said two gas wells which are now producing gas, which are not included in this agreement. And in the event the parties of the first part are not satisfied with such statements of amount of gas delivered and sold from said premises, the parties of the first part, by themselves or their agent, shall have the right of access for and inspection of the original meter charts taken from said wells; and they may also inspect the statements furnished by the Company that purchases all the gas from said wells. Second party shall pay for all gas used by it off said premises.

And it is further agreed that the record of the measurement of said gas by the Company to which the party of the second part sells said gas, and the settlement between the party of the second part and such purchaser shall be final and binding as between the parties hereto.

Should gasoline be manufactured by the party of the second part from natural gas produced from these wells, the party of the second part shall pay unto the parties of the first part the equal one-eighth part of the net proceeds derived from the gasoline produced and marketed from said wells; and pay unto them the equal one-eighth of the amount the second party receives for said gas after the gasoline has been extracted therefrom.

The delivery of the said one-eighth of all the natural gas which may be produced and marketed from said premises, (except from the two gas wells now producing gas on

said premises), from any and all wells which may be hereafter drilled upon said premises and the purchase of the same by the party of the second part, and the payment for the gasoline manufactured, if any, as aforesaid, shall be in lieu of the quarterly rental of One Hundred Dollars quarterly, in advance, for the gas from each and every gas well which may be hereafter drilled upon said premises, as is provided for in the said original lease.

It is agreed between the parties hereto that all the terms and conditions of said original lease shall remain in full force and binding effect, except so far as they may be changed by this agreement.

Witness the following signatures and seals.

|  | Joseph Freeman | (Seal) |
|  | Flora Freeman | (Seal) |

State of West Virginia,

Doddridge County, to-wit:

I, U. G. Summers, a Notary Public in and for said County and State, do hereby certify that Joseph Freeman and Flora Freeman, his wife, whose names are signed to the foregoing writing, bearing date on the 18th day of March, 1925, have this day acknowledged the same before me in my said County.

Given under my hand this, 19" day of March, 1925.

U. G. Summers, Notary Public.

My commission expires October 21, 1929.

State of West Virginia,

Doddridge County, County Clerk's Office,  June 1st, 1925.

The foregoing writing and the annexed certificate were this day admitted to record in this office.

Teste: _Pearl Hudson_ ,Clerk.

---

HENRY ASH, EX'OR.,      I      Contract, Made and entered into this 7th day of March,
TO /// CONTRACT         I  1925, by and between Henry Ash, Executor, of the Will of Marshall
CARNEGIE NAT.GAS CO. I  Ash, deceased, and Henry Ash, Executor of the will of
--------------------       Zadok Ash, deceased, of West Union, Doddridge County, West Vir-
ginia, parties of the first part and Carnegie Natural Gas Company, a corporation, of Pittsburgh, Pennsylvania, party of the second part:

Whereas, the said Carnegie Natural Gas Company, under and by virtue of a certain oil and gas lease given by by Marshall Ash and Martha Ash, his wife, bearing date the 19th day of March, 1913, of record in the office of the clerk of the County Court of Doddridge County, West Virginia, in Lease Book No.31, page 41, on a tract of 352 acres, more or less of land, on Broad Run, in McClellan District, Doddridge county, West Virginia, entered upon said land and drilled wells No.1-531- No.3-617- No.4-783- No.5-762 and No. 7-983, which said wells have been making oil and what is commonly called "casing Head Gas", and the said Carnegie Natural Gas Company being of the opinion that the said Casing Head Gas can be used to the mutual advantage of all parties concerned, provided the parties hereto can and do agree on terms whereby said casing head gas can be marketed and used off of said premises:

Now, Therefore This Contract Witnesseth, That for and in consideration of the premises and the payment of one dollar by the said party of the second part to the said

# FORD LAW OFFICE
## 217 E. MAIN ST.
## CLARKSBURG, WEST VIRGINIA 26301

-----

(304) 626-3116
FAX (304) 626-3300

William E. Ford III
Admitted in West Virginia and Florida

April 12, 2019

Antero Resources Corportion
1615 Wynkoop St.
Denver, Colorado 80202

*Via Certified Mail/Return Receipt Requested*
*No. 7018 3090 0001 1449 1741*

Re:    Freeman Leasehold
       West Union District
       Doddridge County, West Virginia

| | |
|---|---|
| Chalk Unit Well 1H | API #47-017-06818 |
| Chalk Unit Well 2H | API #47-017-06819 |
| Michels Unit Well 1H | API #47-017-06811 |
| Michels Unit Well 2H | API #47-017-06812 |
| Warrior Unit Well 1H | API #47-017-06828 |
| Warrior Unit Well 2H | API #47-017-06808 |
| Buffett Unit Well 1H | API #47-017-06847 |
| Buffett Unit Well 2H | API #47-017-06848 |
| Jimmy Unit Well 1H | API #47-017-06838 |
| Jimmy Unit Well 2H | API #47-017-06790 |
| Jimmy Unit Well 3H | API #47-017-06839 |
| Smithers Unit Well 1H | API #47-017-06845 |
| Smithers Unit Well 2H | API #47-017-06844 |
| Taunus Unit Well 1H | API #47-017-06840 |
| Taunus Unit Well 2H | API #47-017-06841 |
| Taunus Unit Well 3H | API #47-017-06842 |

Dear Sir/Madam:

Please be advised that I have been retained by Richard Armstrong and Donald Reynolds to represent them regarding their ownership interests of the oil and gas produced by the above referenced oil and gas wells.

Mr. Armstrong and Mr. Reynolds each own a 1/16 interest in the oil and gas held by that certain Lease dated April 15, 1913 and recorded in Lease Book 27 at Page 233 from Joseph Freeman and Flora Freeman, his wife to G. H. Traner and J.E. Trainer containing:

*Ex. C.*

"1st Tract 540 Acres more or less and 2nd Tract 60 Acres more or less aggregating 600 acres more or less."

It appears from the information available on the WV DEP website that the first of the above wells commenced production in July 2018 and all of the above wells have been producing since at least December 2018.  Mr. Armstrong and Mr. Reynolds have yet to receive any royalties.

The subject Lease provides in its sixth paragraph on page 233 that "...said payment to be made on each well within sixty days after completion of well and to be paid each three months thereafter while the gas from said well is used. "

In addition, by Agreement dated March 18, 1925, and recorded in Lease Book 41 at Page 431,  Joseph Freeman and Flora Freeman agreed with Clifton Oil and Gas Company amended the subject lease by adding, among other things, the following:

"..... It is further agreed by and between the parties hereto, that the parties of the first part shall sell to the party of the second part and that the party of the second part shall purchase from the parties of the first part all the said one-eighth of said gas produced and marketed by the party of the second part, its successors or assigns; and settlement shall be made monthly, on or before the last day of every month, for the said royalty gas delivered to the credit of the parties of the first part during the preceding month; and the party of the second part shall also furnish to the parties of the first part a true and correct statement of the entire amount of gas produced and saved from said leased premises during the preceding month, except the two gas wells which are now producing gas, which are not included in this agreement..  And in the event the parties of the first part are not satisfied with such statements of amount of gas delivered and sold from the said premises, the parties of the first part, by themselves or their agent, shall have the right of access for and inspection of the original meter charts taken from said wells; and they may also inspect the statements furnished by the Company that purchases all the gas from said wells. Second party shall pay for all gas used by it off said premises. ...."

Mr. Armstrong and Mr. Reynolds are requesting that Antero pay them all royalties due for production from their interests in all of the above described wells and to provide documentation supporting its calculations within thirty (30) days of the date of this letter.  If my clients have not been paid what is due them by then, they have asked me to seek other avenues to collect what is due.

Please contact me after you have reviewed this letter to discuss the same.  I look forward to hearing from you.

Sincerely,

William E. Ford III



11 Grandview Circle
Suite 200
Canonsburg, PA 15317
(724) 749-3140   (724) 749-3143 Fax
www.steptoe-johnson.com

Writer's Contact Information

(724) 749-3107
justin.rubenstein@steptoe-johnson.com

May 17, 2019

William E. Ford, III, Esquire
Ford Law Office
217 E. Main Street
Clarksburg, WV 26301

Re:   Antero Resources Corporation -
Richard Armstrong and Donald Reynolds

Dear Bill:

This will acknowledge receipt of your letter to Antero Resources Corporation ("Antero") dated April 12, 2019, relating to Richard Armstrong and Donald Reynolds. In your letter, you advise that each owns a 1/16 interest in oil and gas held by a lease dated April 15, 1913, of record in Doddridge County, West Virginia, at Lease Book 27, Page 233. Further, you advise that you understand the lease is in Antero's Chalk, Michels, Warrior, Buffett, Jimmy, Smithers, and Taunus units and that wells within those units have been producing since as early as July 2018 and at least since December 2018. You also cite to the lease provision regarding payment within 60 days of completion of a well and a 1925 modification. You request that Antero pay royalties due to Mr. Armstrong and Mr. Reynolds within 30 days.

Upon review of the 1913 lease and subsequent modifications, including those executed by Richard Armstrong and Donald Reynolds, we do not believe the payment provisions you cited from the 1913 lease and the 1925 modification remain applicable where the lease royalty provision has been further modified by modifications executed in 2014 and 2015 by Mr. Reynolds and Mr. Armstrong, respectively. As you are aware, the 1913 lease originally provided for quarterly flat rate payments.

West Virginia Code Section 37C-1-3 provides that production payments shall occur within 120 days from the first date of sales and within 60 days thereafter for each additional sale. The statute provides that the remedy for failure to remit timely payments is an interest penalty at the prime rate plus an additional two percent until payment is made, to be compounded quarterly. Based upon the foregoing, we are aware of no basis for lease termination or other claims.

Antero continues to work to put the units into pay status. To the extent any payments exceed the statutory periods and the reason for delay is not one of the exceptions under the statute, Antero will make the required interest payments to Mr. Armstrong and Mr. Reynolds.



West Virginia  •  Ohio  •  Kentucky  •  Pennsylvania  •  Texas  •  Colorado



William E. Ford, III, Esquire
May 17, 2019
Page 2

Should you have questions regarding the foregoing, please do not hesitate to contact me.

Sincerely,

Justin A. Rubenstein

JAR/cee