**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG**

**RICHARD L. ARMSTRONG,**

        **Plaintiff,**

**v.**                                   **Civil Action No. 1:19-CV-173
Hon. Judge Irene M. Keeley**

**ANTERO RESOURCES CORPORATION,**

        **Defendant.**

**MEMORANDUM OF LAW IN SUPPORT OF
ANTERO RESOURCES CORPORATION'S MOTION TO DISMISS**

## I.    INTRODUCTION

Defendant Antero Resources Corporation ("Antero") submits this memorandum in support of its motion to dismiss the complaint filed by Plaintiff Richard L. Armstrong. The Court should dismiss Plaintiff's complaint because it fails to state a claim upon which relief may be granted. Specifically, Plaintiff does not allege a complete contract, as certain modifications are omitted from the complaint. Plaintiff also cannot state a claim for breach of contract because the lease provision Plaintiff cites as governing the time for royalty payments was superseded by subsequent lease modifications. Moreover, West Virginia Code Section 37C-1-3 does not support a claim for royalties but only creates a remedy for interest upon payments of royalty after the statutory periods. In addition, Plaintiff cannot state a claim for breach of contract because the lease provision Plaintiff cites as creating a right to access records also was superseded by subsequent lease modifications. Plaintiff cannot state a claim for breach of the implied covenant of good faith and fair dealing, which is not a stand-alone cause of action. Finally, Plaintiff cannot state a claim for breach of fiduciary duty because the parties do not share a fiduciary relationship. For these reasons, the Court should dismiss the complaint.

## II.    STATEMENT OF THE CASE

On August 6, 2019, Plaintiff commenced this civil action against Antero by filing a complaint in the Circuit Court of Doddridge County, West Virginia, Civil Action No. 19-C-17. The complaint does not contain enumerated counts but appears to include claims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) breach of fiduciary duty.  All claims relate to Plaintiff's alleged one-sixteenth ($^1/_{16}$) interest in approximately 605 acres of the oil and gas that is subject to a lease presently held by Antero in Doddridge County, West Virginia.  *See* ECF No. 1-1.  Plaintiff demands compensatory damages, an order requiring Antero to grant Plaintiff the right of access for and inspection of the original meter charts and statements furnished by the company that purchases gas from the wells on the leases, attorney's fees, costs, and expenses, and pre-judgment and post-judgment interest, and such other relief as the Court deems just.  *See id.*

The complaint identifies and attaches as "Exhibit A" an "Agreement" between Joseph Freeman and Flora Freeman and G.H. Trainer and J.E. Trainer dated April 15, 1913, and recorded in Book 27, Page 233 ("Freeman Lease").[1]

The Freeman Lease states in pertinent part as follows:

> In consideration of the premises, the said party of the second part covenants and agrees: 1st – To deliver to the credit of the first parties, their heirs or assigns, free of cost, in the pipe line to which parties of the second part may connect their wells, the equal one-eighth (1/8) part of all oil produced and saved from the leased premises; and 2nd – To pay One Hundred ($100.00) Dollars each three months in advance for the gas from each and every gas well drilled on said premises, the product from which is marketed and used off the premises, *said payment to be made on each well within sixty days after completion of well* and to be paid each three months thereafter while the gas from said well is used.

ECF No. 1-1 at 11 (emphasis added).

---

[1] All book and page numbers referenced herein refer to instruments of record in the Office of the Clerk of the County Commission of Doddridge County, West Virginia, unless otherwise noted.

The complaint also identifies and attaches as "Exhibit B" an "Agreement" between Joseph Freeman and Flora Freeman and the Clifton Oil & Gas Company dated March 18, 1925, and recorded in Book 41, Page 431 ("1925 Freeman Modification"). The 1925 Freeman Modification alters the royalty provision of the Freeman Lease in pertinent part as follows:

> NOW, THEREFORE, In consideration of the premises, it is agreed by and between the parties hereto that from and after the date hereof, the party of the second part shall pay and deliver unto the parties of the first part, as full consideration for the gas from each and every gas well which may be hereafter drilled upon said premises, and from all the oil wells now drilled upon said premises, or which may be hereafter drilled upon said premises, the equal one-eighth (1/8) part of all the natural gas which may be produced and marketed from said wells, or any of them, both gas wells and oil wells, (except the two gas wells now producing gas on said premises), so long as the party of the second part, its successors or assigns, shall market the gas from said wells, or any of them, off the premises.
>
> It is further agreed by and between the parties hereto, that the parties of the first part shall sell to the party of the second part and that the party of the second part shall purchase from the parties of the first part all the said one-eighth of the said gas produced and marketed from said premises, at the same price and upon the same terms and conditions as all the gas from said leased premises is now being marketed, or shall be hereafter marketed by the party of the second part, its successors or assigns; and settlement shall be made monthly, on or before the last day of every month, for the said royalty gas delivered to the credit of the parties of the first part during the preceding month; and the party of the second part shall also furnish to the parties of the first part a true and correct statement of the entire amount of gas produced and saved from said leased premises during the preceding month, except the said two gas wells which are now producing gas, which are not included in this agreement. *And in the event the parties of the first part are not satisfied with such statements of amount of gas delivered and sold from said premises, the parties of the first part, by themselves or their agent, shall have the right of access for and inspection of the original meter charts taken from said wells; and they may also inspect the statements furnished by the Company that purchases all the gas from said wells.* Second party shall pay for all gas used by it off said premises.

ECF No. 1-1 at 15 (emphasis added).

Plaintiff alleges that Antero has breached the terms of the Freeman Lease, as modified, by drilling sixteen oil and gas wells on the Freeman Lease and failing to pay royalties owed to Plaintiff within 60 days of production. *See id.* at ¶ 34, 37. Plaintiff further alleges that Antero has breached

the terms of the Freeman Lease, as modified, by refusing a request for documentation supporting its calculations of production from the wells.  *See id.* at ¶ 35.  Plaintiff also alleges that Antero has breached a duty of good faith and fair dealing.  Plaintiff further alleges that Antero has breached its fiduciary duties to Plaintiff.  *See id.* at ¶ 36.  Plaintiff further alleges that Antero has breached a statutory duty under West Virginia Code Section 37C-1-3 to pay interest.  *See id.* at ¶ 38.

The complaint fails to identify or attach any subsequent modifications of the Freeman Lease after the 1925 Freeman Modification.  Specifically, the complaint fails to identify or attach a subsequent "Agreement" between Joseph Freeman and Flora Freeman and the Clifton Oil & Gas Company dated May 15, 1926, and recorded in Book 42, Page 323 ("1926 Freeman Modification").[2]  Similarly, the complaint fails to identify or attach a subsequent "Agreement" between John Doak and U.G. Summers and the Clifton Oil & Gas Company dated October 12, 1936, and recorded in Book 52, Page 204 ("1936 Doak Modification").[3]  Finally, the complaint fails to identify or attach the "Modification of Oil and Gas Lease" between the Eugene H. Armstrong Estate, by Plaintiff Richard L. Armstrong, and Antero dated August 28, 2015, a memorandum of which is recorded in Book 410, Page 251 ("2015 Armstrong Modification").[4] The 2015 Armstrong Modification contains an addendum which includes specific clauses regarding the lessor's royalty and right to audit Antero's records.

Antero removed this action to this Court on September 6, 2019.

---

[2] A copy of the 1926 Freeman Modification is attached hereto as "Exhibit A."
[3] A copy of the 1936 Doak Modification is attached hereto as "Exhibit B."
[4] A copy of the 2015 Armstrong Modification is attached hereto as "Exhibit C."

III.   **ARGUMENT**

A.   **Standard of Decision**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citations omitted).

The Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted). Although courts must accept a complaint's factual allegations as true, "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" do not receive the same treatment. *Iqbal*, 556 U.S. at 663. Moreover, Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Thus, a complaint may be dismissed when the facts alleged clearly demonstrate that the plaintiff has not stated a claim and is not entitled to relief." *Garrett v. Aegis Cmty. Grp., LLC*, No. 1:13-CV-131, 2014 WL 3572046, at *2 (N.D. W. Va. July 21, 2014) (citations omitted).

Courts also may consider any exhibits to the complaint, matters of public record, and other similar materials that are subject to judicial notice. *See Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also Tinsley v. OneWest Bank, FSB*, 4 F. Supp. 3d 805, 819 (N.D. W. Va. 2014) ("When a document is properly considered in the context of a motion to dismiss and it conflicts with the bare allegations of the complaint, the document prevails.").

**B.      The Complaint Fails to State a Claim upon Which Relief May Be Granted.**

**1.      Plaintiff Does Not State an Adequate Claim for Breach of Contract Because Plaintiff Fails to Allege a Complete Contract.**

Plaintiff fails to adequately plead a breach of contract claim because Plaintiff does not allege a complete contract between himself and Antero.  Rather, Plaintiff cherry picks certain provisions from the Freeman Lease and 1925 Freeman Modification while ignoring subsequent modifications altogether.  In *KBS Preowned Vehicles, LLC v. Revia, Inc.*, No. 1:13CV138, 2014 WL 12591890 (N.D. W. Va. Mar. 26, 2014), this Court held that the plaintiff's amended complaint failed to allege a necessary element of its contract claim, reasoning as follows:

> First, KBS fails to allege the existence of an enforceable contract between it and Reviva. . . .  Instead, KBS baldly asserted that Reviva had "the contractual duty to provide [KBS] with a serviceable engine that would permit [KBS'] [Durastar Truck] to be on the road and put to productive use." (Dkt. No. 52 at ¶ 24).  Without any factual support, KBS' naked conclusion that Reviva owed it a contractual duty is simply insufficient to state a facially plausible claim that an enforceable contract between KBS and Reviva existed; the Court can merely speculate that it is so.

*Id.* at *2 (citations omitted).

Likewise, in *Cather v. Seneca-Upshur Petroleum, Inc.*, No. 1:09-CV-139, 2010 WL 3271965 (N.D. W. Va. Aug. 18, 2010), this Court construed Forest Oil's motion to dismiss as a motion for a more definite statement and directed the plaintiffs to file a more definite statement or to amend their complaint. *Id.* at *4. In that case, the amended complaint alleged that Forest Oil was a lessee or ultimate assignee of the leases at issue without alleging the connection between Forest Oil and the leases. *Id.*  The Court concluded that to prevail on a breach of contract claim, "a plaintiff must make out a complete contract and allege a breach of its terms." *Id.* at *2. *See also Rodgers v. Sw. Energy Co.*, No. 5:16-CV-54, 2016 WL 3248437, at *2 (N.D. W. Va. June 13, 2016) (requiring plaintiffs to amend their complaint because the plaintiffs did not attach the lease at issue or identify the date, acreage, parties, any language regarding royalty provisions, the

amounts paid or underpaid, or any other specific details regarding the contract); *Bennett v. Skyline Corp.*, 52 F. Supp. 3d 796, 808 (N.D. W. Va. 2014) (holding valid breach of contract claim must allege the breach on which plaintiffs base the claim and the facts and circumstances that entitle them to damages); *Knisely v. Nat'l Better Living Ass'n, Inc.*, No. 3:14CV15, 2014 WL 4084517 (N.D. W. Va. Aug. 19, 2014) (dismissing breach of contract claim because plaintiff had not sufficiently alleged which policy provisions were breached and the nature of the claim); *Cincinnati Ins. Co. v. Cost Co.*, No. 5:10-CV-7, 2010 WL 1902995, at *3 (N.D. W. Va. May 11, 2010) (dismissing breach of contract claim where plaintiff neither alleged which provisions were breached nor produced a contract because "the plaintiff's claims as to any duties and obligations [were] speculative").

In this action, Plaintiff alleges breaches of and attaches only the underlying Freeman Lease and 1925 Freeman Modification.  Plaintiff does not mention, let alone attach, the 1926 Freeman Modification, the 1936 Doak Modification, or the 2015 Armstrong Modification.  As was the case in *KBS Preowned Vehicles* and *Cather*, Plaintiff does not allege the existence of a complete contract between himself and Antero.  Because Plaintiff fails to attach these subsequent modifications of the Freeman Lease, it is impossible for this Court to determine whether Plaintiff alleges breaches of operative provisions of the contract, as amended, or whether Plaintiff has complied with his obligations under the subsequent modifications.  Moreover, as discussed in more detail below, Plaintiff alleges breaches of provisions in the Freeman Lease and 1925 Freeman Modification that were superseded by these subsequent modifications.  Accordingly, Plaintiff fails to put Antero on notice of a plausible claim for breach of contract, and this Court can only speculate as to what Antero's duties would be under the subsequent modifications of the Freeman Lease.  Therefore, this Court should grant Antero's motion to dismiss Plaintiff's complaint.

2.      **Plaintiff Cannot State a Claim for Breach of Contract Based on the Timing of Royalty Payments or Right to Inspect Antero's Records.**

Plaintiff cannot state a claim for breach of contract because the provision governing the time for royalty payments in the Freeman Lease and the provision governing the right to inspect records in the 1925 Freeman Modification were superseded by subsequent modifications. In *Thornsbury v. Cabot Oil & Gas Corp.*, 231 W. Va. 676, 749 S.E.2d 569 (2013), the West Virginia Supreme Court of Appeals recognized that "[i]t is a well-established, fundamental principle of contract law that a valid, unambiguous written contract may be modified or superseded by a subsequent contract based on a valuable consideration." *Id.*, 749 S.E.2d at 573 (citing Syl. Pt. 1, *Lewis v. Dils Motor Co.*, 148 W. Va. 515, 135 S.E.2d 597 (1964)). Likewise, in *Consolidation Coal Co. v. Mineral Coal Co.*, 147 W. Va. 130, 126 S.E.2d 194 (1962), the West Virginia Supreme Court of Appeals recognized as follows:

> A mineral lease may be modified by agreement of the parties provided the modification is supported by a sufficient consideration; and the modification may consist of the new terms and as much of the old lease as the parties have agreed shall remain unchanged, in which case the terms and conditions of the original lease, so far as consistent with the modified contract, will remain in full force and effect and become incorporated in the modified contract.

*Id.*, 126 S.E.2d at 201 (citations omitted). *See also* Syl. Pt. 3, *Myers v. Carnahan*, 61 W. Va. 414, 57 S.E. 134 (1907) ("Where a new contract is made with reference to the subject-matter of a former contract, containing provisions clearly inconsistent with certain provisions of the original contract, the obligations of the earlier contract, in so far as they are inconsistent with the later one, will be abrogated and discharged, and the two contracts will be construed together, disregarding the provisions of the original which are inconsistent with those of the latter.").

Plaintiff cannot state a claim for breach of contract based on the timing of royalty payments because the royalty provision of the Freeman Lease, which contains the language regarding the

timing of payments, was superseded by subsequent modifications. Specifically, the royalty provision of the Freeman Lease states:

> In consideration of the premises, the said party of the second part covenants and agrees . . . [t]o pay One Hundred ($100.00) Dollars each three months in advance for the gas from each and every gas well drilled on said premises, the product from which is marketed and used off the premises, *said payment to be made on each well within sixty days after completion of well* and to be paid each three months thereafter while the gas from said well is used.

ECF No. 1-1 at 11 (emphasis added).

The addendum to the 2015 Armstrong Modification alters the royalty obligation contained in the Freeman Lease as follows:

> 1. OIL AND GAS ROYALTY. Lessee shall pay Lessor royalty of One Eighth (12.5%) of the amount realized by Lessee from the sale of any oil and gas present in and associated with any formations, horizons, strata or zones produced and sold by Lessee. For all purposes of Addendum, references to oil and gas or either or both of them shall mean oil, or gas, or both and all substances which are constituents of or produced with oil or gas, whether similar or dissimilar or produced in a gaseous, liquid, or solid state. It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form. In no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

Ex. C.

The royalty clause in the addendum to the 2015 Armstrong Modification supersedes the royalty provision contained in the Freeman Lease and preceding modifications thereto. This provision deletes the stringent timelines for payment. Plaintiff does not allege a breach of the 2015 Armstrong Modification. Accordingly, Plaintiff cannot state a claim for breach of contract based on the timing of royalty payments. Moreover, West Virginia Code Section 37C-1-3 does not support a claim for royalties but only creates a remedy for interest upon payments of royalty after the statutory periods.

Likewise, Plaintiff cannot state a claim for breach of contract based on the right to inspect records because the royalty provision of the 1925 Freeman Modification, which contained the language regarding the right to inspect production records, also was superseded by subsequent modifications. Specifically, the royalty provision of the 1925 Freeman Modification states in pertinent part:

> [T]he party of the second part shall also furnish to the parties of the first part a true and correct statement of the entire amount of gas produced and saved from said leased premises during the preceding month, except the said two gas well which are now producing gas, which are not included in this agreement. *And in the event the parties of the first part are not satisfied with such statements of amount of gas delivered and sold from said premises, the parties of the first part, by themselves or their agent, shall have the right of access for and inspection of the original meter charts taken from said wells; and they may also inspect the statements furnished by the Company that purchases all the gas from said wells*. . . .

ECF No. 1-1 at 15 (emphasis added).

The addendum to the 2015 Armstrong Modification alters the right to access records as follows:

> 4. AUDIT. Lessor shall have the right to annually examine, audit, or inspect the books, records, and accounts of Lessee pertinent to the purpose of verifying the accuracy of the reports and statements furnished to Lessor, and for checking the amount of payments lawfully due Lessor. In exercising this right, Lessor shall give notice to Lessee of its intended audit by certified mail, and Lessee shall schedule a time for Lessor within thirty (30) days, and such audit shall be conducted during normal business hours at the office of Lessee at the sole cost and expense of Lessor, and in no case will Lessor be permitted to take documents or copies of documents outside Lessee's office.

Ex. C.

The audit clause in the addendum to the 2015 Armstrong Modification supersedes the right to access records contained in the royalty provisions of the 1925 and 1926 Freeman Modifications. As discussed above, Plaintiff does not allege a breach of the 2015 Armstrong Modification. Moreover, the letter from Plaintiff's counsel dated April 12, 2019, which the complaint attaches as "Exhibit C," references only the right to access records under the 1925 Freeman Modification

and does not invoke the audit clause of the 2015 Armstrong Modification, which is the applicable provision.  *See* ECF No. 1-1 at 18.  For these reasons, this Court should grant Antero's motion to dismiss Plaintiff's complaint.

### 3.  Plaintiff Cannot State a Claim for Breach of the Covenant of Good Faith and Fair Dealing.

Plaintiff cannot state a claim for breach of the implied covenant of good faith and fair dealing implied in every contract under West Virginia law.  *See Packard v. Antero Res. Corp.*, No. 1:18CV04, 2018 WL 2348398, at *3 n.3 (N.D. W. Va. May 23, 2018) ("West Virginia does not recognize a stand-alone claim for breach of the implied covenant of good faith and fair dealing."); *Evans v. United Bank, Inc.*, 235 W. Va. 619, 775 S.E.2d 500, 509 (2015) ("Our federal district court has observed that West Virginia law 'implies a covenant of good faith and fair dealing in every contract for purposes of evaluating a party's performance of that contract.'"); *see also* W. Va. Code § 46-1-201(b)(20) (defining "good faith" in the commercial context, as "honesty in fact and the observance of reasonable commercial standards of fair dealing").  Critically, this Court has recognized that the implied covenant of good faith and fair dealing "does not grant contracting parties rights inconsistent with those expressly set forth in the contract."  *Ballenger v. Nat'l City Mortg., Inc.*, No. 1:14-CV-81, 2015 WL 5062770, at *10 (N.D. W. Va. Aug. 26, 2015).  *See also Evans*, 775 S.E.2d at 509 (affirming holding that petitioners' failure to allege breach of contract was fatal to their claim for a breach of the implied covenant of good faith and fair dealing).  Accordingly, Plaintiff has also failed to state a claim for breach of the implied duty of good faith and fair dealing.

In this action, Plaintiff simply has not stated sufficient facts that would establish a breach of contractual, statutory, or common law duty pertaining to the timing of Plaintiff's royalty payments or the right to inspect records.  As discussed above, Plaintiff cannot state a claim for

breach of contract based on the timing of royalty payments because the timing for such payments originally set forth in the Freeman Lease was superseded by subsequent modifications. Additionally, Plaintiff cannot demonstrate a breach of the 1925 Freeman Modification because the right to inspect records also was superseded by subsequent modifications. Plaintiff cannot establish a breach of the implied duty of good faith and fair dealing because Plaintiff cannot claim any rights greater than those implied in the Freeman Lease and modifications thereto with respect to the payment of royalties or inspection of Antero's records. Therefore, this Court should grant Antero's motion to dismiss Plaintiff's complaint.

### 4.      **Plaintiff Cannot State a Claim for Breach of Fiduciary Duties.**

Plaintiff cannot state a claim for violation of fiduciary duties because, as a matter of law, the parties do not share a fiduciary relationship; thus, Antero does not owe Plaintiff any fiduciary duties. In order to prevail on a breach of fiduciary duty claim under West Virginia law, a plaintiff must generally prove the existence of a fiduciary relationship between the parties. *See State ex rel. Affiliated Const. Trades Found. v. Vieweg*, 205 W. Va. 687, 520 S.E.2d 854, 868 (1999) (Workman, J., concurring) ("Although this Court has not previously identified precisely the elements of a cause of action for a breach of a fiduciary duty, courts have held that the elements of such a cause of action are the existence of the fiduciary relationship, its breach, and damage proximately caused by that breach." (citation omitted)).

In *Elmore v. State Farm Mutual Automobile Insurance Co.*, 202 W. Va. 430, 504 S.E.2d 893 (1998), the West Virginia Supreme Court of Appeals defined a fiduciary duty as "[a] duty to act for someone else's benefit, while subordinating one's personal interests to that of the other person. It is the highest standard of duty implied by law[.]" *Id.*, 504 S.E.2d at 898 (alterations in original) (citation omitted). *See also Wellman v. Bobcat Oil & Gas, Inc.*, No. 3:10-CV-0147, 2010

WL 2720748, at *3 (S.D. W. Va. July 8, 2010) ("[T]he fiduciary obligation is considered an uncommon and extraordinarily strict duty, imposed upon one who has agreed to support another's interest above his own.").

For more than a century, however, the West Virginia Supreme Court of Appeals has recognized that an oil and gas lease does not give rise to any special or fiduciary relationship between an oil and gas lessee and lessor.  For example, in *Grass v. Big Creek Development Co.*, 75 W. Va. 719, 84 S.E. 750, 753 (1915), the Court explained that

> [w]here the object of the operations contemplated by an oil and gas lease is to obtain a benefit or profit for both lessor and lessee, . . . both are bound by the standard of what, in the circumstances, would be reasonably expected of operators of ordinary prudence, having regard to the interests of both.

*Id.*, 84 S.E. at 753.  *See also Jennings v. S. Carbon Co.*, 73 W. Va. 215, 80 S.E. 368, 370 (1913) (recognizing that an oil and gas operator "must deal with the leased premises, not exclusively to serve his own peculiar and selfish interests, unmindful of his obligations to the source from which his authority is derived, but so as to promote the mutual advantage and profit of himself and the lessor").

Based on these principles, this Court dismissed a similar claim for violation of fiduciary duties in *Cather v. Seneca-Upshur Petroleum, Inc.*, No. 1:09-CV-139, 2010 WL 3271965 (N.D. W. Va. Aug. 18, 2010), because the defendants owed no duty to the plaintiffs beyond one of ordinary prudence:

> By their plain terms, the oil and gas leases in dispute in this case were drafted to provide mutual profit to both the defendants and the plaintiffs. Under West Virginia law, therefore, Forest Oil, Seneca-Upshur and EnerVest were required to promote the parties' mutual advantages and profits under a standard of "ordinary prudence."
>
> While the plaintiffs certainly reposed confidence and trust in the defendants as operators pursuant to these leases, under West Virginia law this trust and confidence does not give rise to an agreement, implicit or otherwise, by which the defendants agreed "to support [the plaintiffs'] interest[s] above [the defendants']

> own." . . . *Instead, the duty owed by oil and gas lessees to their lessors is a duty of ordinary prudence.*

*Id.* at \*5 (alterations in original) (emphasis added) (citations omitted).

Likewise, in *Leggett v. EQT Prod. Co.*, No. 1:13-CV-4, 2015 WL 1212342, this Court dismissed an identical claim for violation of fiduciary duties, reasoning as follows:

> [T]o the extent that the plaintiffs believe that placing their trust in EQT regarding royalty payments and calculations creates such a duty, that argument is misguided. As the Supreme Court of Appeals of West Virginia provided in *Elmore*, "'as a general rule, a fiduciary relationship is established only when it is shown that the confidence reposed by one person was actually accepted by the other, and merely reposing confidence in another may not, of itself, create the relationship.'" 504 S.E.2d at 899 (internal citations omitted). Although the plaintiffs allegedly placed their trust and faith in EQT to properly determine the royalty payments, no allegations have been made that EQT accepted such confidence for the purposes of creating a fiduciary relationship. In addition to that lack of acceptance, EQT does not appear to be under any obligation to subordinate its interests to those of the plaintiffs. Therefore, such a duty does not apply to the lease between EQT and the plaintiffs.

*Id.* at \*3.  *See also Corder v. Antero Res. Corp.*, 322 F. Supp. 3d 710, 720 (N.D. W. Va. 2018) (granting defendant's motion to dismiss breach of fiduciary duty claim); *Fout v. EQT Prod. Co.*, No. 1:15-CV-68, 2015 WL 3755934, at \*2 (N.D. W. Va. June 16, 2015) (same).

Plaintiff's contention that Antero had the obligation to act as his fiduciary is specious.  As has been the case for more than a century in West Virginia, Antero is in no way obligated to subordinate its interests to Plaintiff's interests.   Rather, *Cather*, *Leggett*, *Corder*, and *Fout* repeatedly demonstrated that Plaintiff was owed only a duty of ordinary prudence.  Accordingly, Plaintiff cannot establish a fiduciary relationship with Antero because an oil and gas lessee owes no duty to lessors beyond one of ordinary prudence under West Virginia law.  Because Plaintiff cannot, as a matter of law, establish a fiduciary relationship, Plaintiff cannot state a claim for violation of fiduciary duties.  Therefore, this Court should grant Antero's motion to dismiss Plaintiff's complaint.

**IV.**   <u>**CONCLUSION**</u>

For all of these reasons, this Court should grant Antero Resources Corporation's Motion

to Dismiss and enter an Order dismissing the complaint and the entire action with prejudice.

<u>*/s/ Amy M. Smith*</u>
W. Henry Lawrence (WV State Bar #2156)
hank.lawrence@steptoe-johnson.com
Amy M. Smith (WV State Bar #6454)
amy.smith@steptoe-johnson.com
Justin A. Rubenstein (WV Bar #9974)
justin.rubenstein@steptoe-johnson.com
Shaina D. Massie (WV State Bar #13018)
shaina.massie@steptoe-johnson.com
400 White Oaks Boulevard
Bridgeport, WV  26330
(304) 933-8000

Attorneys for Defendant Antero Resources
Corporation

STEPTOE & JOHNSON PLLC
    Of Counsel

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of September 2019, I electronically filed the foregoing "Memorandum of Law in Support of Antero Resources Corporation's Motion to Dismiss" with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following CM/ECF participants:

> William E. Ford, Esquire
> clarksburgwvlawyer@gmail.com
> Ford Law Office
> 217 East Main Street
> Clarksburg, WV 26301

*/s/  Amy M. Smith*
Amy M. Smith (WV Bar #6454)

16

8592778