IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

RICHARD L. ARMSTRONG,

    Plaintiff,

v.                                                  Civil Action No. 1-19-CV-173
                                                  Hon. Judge Irene M. Keeley

ANTERO RESOURCE CORPORATION,

    Defendant.

PLAINTIFF RICHARD ARMSTRONG'S RESPONSE MEMORANDA IN
OPPOSITION TO ANTERO RESOURCES CORPORATION'S MOTION TO DISMISS

    Plaintiff Richard L. Armstrong, by and through Counsel, respectfully represents that Antero Resources Corporation's ("Antero") Motion to Dismiss should be denied and that the Motion be stricken from the record in its' entirety under F.R.Civ. P.12(f) because each and every representation made by Defendant Antero to this honorable Court has no basis in either law or fact.

    At the time Plaintiff Armstrong filed suit against Defendant Antero, Plaintiff Armstrong had not been paid any royalties from any of the Marcellus wells producing from the leasehold since in or about July 2018. Plaintiff Armstrong made written demand by letter dated April 12, 2019 to Defendant Antero for payment of royalties and documentation supporting their calculations. With the Royalty Statement dated July 29, 2019, Defendant Antero began to pay royalties from production of the Michels and Warrior Unit wells. With the Royalty Statement dated August 29, 2019 Defendant Antero commenced payment of royalties on production from additional wells.

Although Defendant Antero removed to Federal Court this action on the basis, in part, that Plaintiff Armstrong's damages exceed $75,000.00, it does not appear that at present Plaintiff Armstrong meets the $75,000 threshold.  However, Plaintiff Armstrong cannot say in good faith one way or another because Defendant Antero is the only entity which knows how much product it has produced from the subject wells. Thus, the importance of the lease provisions for verification of sales is so brightly highlighted. This action from the beginning has been one seeking specific performance of the royalty provisions from the 1913 primary lease and the 1926 modification thereof. Regardless of Defendant Antero's protestations to the contrary, no subsequent lease modification nor statute has modified or eliminated the pertinent provisions of the 1913 primary lease and the 1926 modification thereof.

## DISCUSSION

All elements of a contract exist between the parties as to the subject tract. Plaintiff Armstrong met all contractual requirements and Defendant Antero has refused to comply with pertinent provisions.  To state a claim for breach of contract under Rule 12(b)(6), Plaintiff Armstrong must allege facts sufficient to support the following elements: the existence of a valid, enforceable contract; that Plaintiff Armstrong has performed under the contract; that the Defendant Antero has breached or violated its duties or obligations under the contract; and that Plaintiff Armstrong has been injured as a result. See 23 Williston on Contracts § 63:1 (Richard A. Lord, ed. 4th ed. West 2009)." *Rhoades v. Chesapeake & O. Ry. Co.*, 49 W.Va. 494, 39 S.E. 209, 211 (1901); *Executive Risk Indem. Inc. v. Charleston Area Medical Ctr. Inc.*, 681 F. Supp.2d 694 (S.D. W. Va., 2009)

For purposes of a Motion to Dismiss, Plaintiff Armstrong is entitled to the benefit of all reasonable inferences from the facts alleged in the Complaint. *L.S. Good v. H. Daroff & Sons, Inc.*, 283 F.Supp. 635 (N.D.W.Va. 1967). " A Complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief. " *Cromer v. Lounsbury Chiropractic Office, Inc.*, 866 F.Supp960 (S.D.W.Va. 1994). Plaintiff Armstrong has met this burden.

In a series of misrepresentations and non-sequiturs Defendant Antero states that Plaintiff Armstrong does not allege a complete contract, as certain modifications are omitted from the Complaint. Each and every modification written by Defendant Antero (to allow for pooling) contains the same consistent and complete contract language and the language is this:  "..each of the undersigned (Armstrong and Antero) does hereby adopt, ratify, and confirm the Lease as amended..." "...in accordance with *each and all* of the provisions **contained in the Lease as amended hereby**, and each does hereby declare that the Lease is a valid and **subsisting** oil and gas lease and **all** of its provisions are binding upon the undersigned and shall extend to and be binding upon the heirs, executors, administrators, successors, and assigns of each of the undersigned." See Defendant's Exhibit C.

The Freeman Lease, the Freeman Lease Modification, the Doak Modification (which deals with casinghead gas and has nothing to do with altering Antero's responsibility to provide all records detailed in the Freeman Lease Modification) and the 2014 and 2015 Antero Modifications providing for pooling (which contain emphatic ratifications of the Freeman Lease and Modification) are all attached as Exhibit A [1-5

the "Freeman Lease Contract] to Defendant Antero's Motion to Dismiss.  The plain language in each Antero modification ratifies the original requirements from the Freeman Lease and Modification that Antero has the duty to provide all records provided for in the Freeman Lease Modification.

To represent that a pooling modification allows for nonpayment under the original lease when significant production is occuring is absurd.   All lease modifications in the chain of title underscore Defendant Antero's responsibility to honor the terms of the original Freeman lease.

The statement that "West Virginia Code Section 37C-1-3 *does not support a claim for royalties* but only creates a remedy for interest upon payments of royalty after the statutory period is a blatant misrepresentation of the language of the statute which is:

> "All regular production payments from horizontal wells due and owning
> to an interest owner shall be tendered in a timely manner, which shall not
> exceed 120 days from the first date of sale of oil, natural gas, or natural
> gas liquids is realized and within 60 days thereafter for each additional
> sale, unless such failure to remit is due to lack of record title in the interest
> owner, a legal dispute concerning the interest, a missing or unlocatable
> owner of the interest, or due to conditions otherwise specified in this
> article.
>
> Failure to remit timely payment for horizontal wells shall result in a mandatory
> additional payment of an interest penalty to be set at the prime rate plus
> an additional two percent until such payment is made, to be compounded
> quarterly.  The prime rate shall be the rate published on the day of the
> sale of oil, natural gas, and natural gas liquids in the Wall Street Journal.
> reflecting the base rate on corporate loans posted by at lease 75 percent
> of the nation's 30 largest banks."

The entire first portion of W.V. Code §37C-1-3 supports a claim for royalties.

That this statute "does not support a claim for royalties but only creates a remedy for interest upon payments of royalty after the statutory periods" is a gross and intentional misrepresentation.

4

Similarly, Antero's statement that, "...the lease provision Plaintiff cites as creating a right to access records also was superseded by subsequent lease modifications" is false. Each and every lease modification was prepared by Antero. Each and every lease modification stated, in Antero's own words, that: ""..each of the undersigned (Armstrong and Antero) does hereby adopt, ratify, and confirm the Lease as amended..." "...in accordance with *each* **and** *all* of the provisions **contained in the Lease as amended hereby**, and each does hereby declare that the Lease is a valid and **subsisting** oil and gas lease and **all** of its provisions are binding upon the undersigned and shall extend to and be binding upon the heirs, executors, administrators, successors, and assigns of each of the undersigned." See Defendant's Exhibit C.

The Plaintiff Armstrong's claim for breach of the implied covenant of good faith and fair dealing does not stand alone. It stands among Plaintiff Armstrong's claims to: 1.) be paid as contracted and 2.) to access and inspect Antero's production and sales records as provided in the Freeman Lease and Freeman Lease modification. Absolutely no modification alters Antero's contractual requirements.

The fiduciary duty between the Plaintiff Armstrong and Defendant Antero is academic. According to Black's Law Dictionary, "[O]ne is said to act in a "fiduciary capacity" or to receive money or contract a debt in a "fiduciary capacity" when the business which he transacts, or the money or property which he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other part. The term is not restricted to technical or express trusts, but includes also such offices or relations as those of an attorney at law, a

guardian, executor, or broker, a director of a corporation, and a public officer." Templeton v. Bokler, 73 Or. 494, 144 P. 405, 494, 144 P. 405, 409.  Black's defines a "fiduciary or confidential relation" as a "very broad term embracing both technical fiduciary relations and those informal relations which exist wherever one man trusts in or relies upon another, State v. Gautier, 108 Fla. 390, 147 So. 240, 242, and also as "one founded on trust or confidence reposed by one person in the integrity and fidelity of another."  Kerrigan v. O'Meara, 71 Mont. 1 227, P. 819, 821.

    Defendant Antero has an obligation to pay the Plaintiff Armstrong what it owes him for what it contracted to pay.

    Because Defendant Antero is exceedingly secretive and circumspect about providing documents in its' possession for a host of reasons designed to maximize its' own profits, it puts the Plaintiff between a rock and a hard place in the "trust" department. Plaintiff Armstrong is forced to have a modicum of "trust" that Antero will pay him what he is owed, and that said payments will be calculated as contracted.  Since Defendant Antero operates within the confines of great secrecy and paranoia about production and sales records, Plaintiff  Armstrong has no choice but to "trust" that Defendant Antero is not skimming from what Defendant Antero owes him: is not using his money to pay unnecessary gathering costs, is not selling gas low to wholly-owned subsidiaries of Defendant Antero and then having said subsidiary subsequently sell it high to maximize profits for Defendant Antero and minimize payment to the Plaintiff Armstrong,   Whether "forced trust" is "fiduciary trust" is an argument for another day.  Plaintiff Armstrong is required to rely on Defendant Antero and "trust" that he is not being cheated.

However, in this case, there is an unassailable lease contract that specifies *exactly* what information Defendant Antero must provide to the Plaintiff Armstrong and *exactly* what the Plaintiff Armstrong must be paid.

The lease contract requires Defendant Antero to pay Plaintiff Armstrong the correct contractual amount due him under the Freeman lease.

The only way to assure that this duty is met is to allow Plaintiff Armstrong his right to access and inspect Defendant Antero's production and sales records as detailed in the Freeman Lease and Freeman Lease Modification. No modification in this chain of title has altered this clear, explicit, well-stated right.

A careful analysis of the 1913 lease language with the specific language providing for the lessor's rights of inspection in the 1925 Freeman Lease Modification, supported by the ratifications in the 2014 and 2015 Antero modifications ("..each of the undersigned (Armstrong and Antero) does hereby adopt, ratify, and confirm the Lease as amended..." "...in accordance with *each and all* of the provisions **contained in the Lease as amended hereby**, and each does hereby declare that the Lease is a valid and **subsisting** oil and gas lease and **all** of its provisions are binding upon the undersigned and shall extend to and be binding upon the heirs, executors, administrators, successors, and assigns of each of the undersigned.") is clear, inalienable evidence that Antero is contractually bound to:

> *"Purchase **ALL** the said 1/8 gas produced and marketed at the same price and upon the same terms and conditions as **ALL** the gas from said leased premises is now being marketed or shall be marketed  **AND**
>
> * Settlement shall be made monthly on or before the last day of every month for the said royalty gas delivered to the client of the party of the first part during the preceding month  **AND**

7

* **Party of the Second Part Shall Furnish Party of the First Part a True and Correct Statement of the ENTIRE amount of Gas Produced and Saved from Said Leased Premises During the Preceding Month  AND**

* **IN THE EVENT THE PARTIES OF THE FIRST PART ARE NOT SATISFIED WITH THE STATEMENT OF AMOUNT OF GAS DELIVERED AND SOLD FROM SAID PREMISES, THE PARTY OF THE FIRST PART, BY THEMSELVES OR THEIR AGENT, SHALL HAVE THE RIGHT OF ACCESS FOR AND INSPECTION[1] OF THE ORIGINAL METER CHARTS TAKEN FROM SAID WELLS**

   **AND**

* **They May Also Inspect the Statements Furnished by the Company That Purchases All the Gas from Said Wells**.

Also, the contract states that "**Party of the Second Part shall pay for all gas used by it off said premises**," and this appears include distillates and purchasers of distillates.  See Freeman Lease modification at Exhibit A.

In addition, both Antero 2014 and 2015 Memoranda of Modification of Oil and Gas Lease, filed in the County Clerk's Office state unequivocally that "[T]he execution, delivery and recordation of this Memorandum of Modification of Oil and Gas Lease *shall have no effect upon*, and is *not intended as amendment of the terms and conditions of the Lease*."   See Memoranda of Modification of Oil and Gas Leases at Exhibit B.

Thus, there is nothing in the original 1913 lease, or any subsequent modification, to alter the terms of the Freeman Lease or the Freeman Lease Modification. The original lease and modification are ratified and the rights of the Plaintiff Armstrong to access and inspect Defendant Antero's production and sales records are expanded by Defendant Antero's own 2014 and 2015 modifications and recorded notices thereof.

---

[1] "Inspect" origin 1615-25 Latin "inspectus", past participle of "inspicere"":  to look into "to look carefully over or at"; view closely and critically; to view or examine formally or officially.

8

There is no modification in the subject chain of title that changes Plaintiff Armstrong's right to be paid and his right to access and inspect Antero's production and sales records for his property as contracted by Defendant Antero and ratified by Defendant Antero in the modifications that it negotiated with Plaintiff Armstrong.  This is what Defendant Antero agreed to.  This is what they both agreed.

Plaintiff Armstrong is not satisfied with the statement of the amount of gas delivered and sold from said premises due, in part, to the fact that Defendant Antero has stonewalled any reasonable attempt to inspect sales information, contrary to the contractual lease terms in the Freeman Lease Contract at Exhibit A.  Without production and sales information, and that information is the right of Plaintiff Armstrong to inspect under the Freeman Lease Contract, the rebuttable presumption of wrongdoing arises which requires the exercise of Plaintiff Armstrong's contractual rights of inspection of Defendant Antero's production and sales records to refute.  All information relative to Defendant Antero's derivation of the amount to pay Plaintiff Armstrong under the Freeman Lease Contract  has been requested under the authority of the Freeman Lease Contract and Defendant Antero will not provide it, in unlawful defiance of it's obligations at law, pursuant to contract.

For these reasons, this Honorable Court should deny Defendant Antero's Motion to Dismiss, and issue an Order compelling Defendant Antero to specifically perform its obligations under the contract to allow inspection of  production and sales documents as agreed in the clear and ironclad contract at Exhibit A.

WHEREFORE, Plaintiff Richard L. Armstrong very respectfully requests this honorable Court to deny Defendant Antero Resources Corporation's Motion to Dismiss,

9

and to enter an Order for Specific Performance requiring Defendant Antero to allow the Plaintiff Armstrong to access and inspect all production and sales records as it agreed to do and is required to do under the Freeman Lease Contract, and to remit to the Plaintiff Armstrong the monies that are due and owing under the Freeman Lease Contract.

           __s/William E. Ford_____
           William E. Ford, III  (WV State Bar #1246)

           Attorney for Plaintiff Richard L. Armstrong

### CERTIFICATE OF SERVICE

      I, William E. Ford III, Counsel for Plaintiff, hereby certify that on September 24, 2019, I electronically filed this PLAINTIFF RICHARD ARMSTRONG'S RESPONSE MEMORANDA IN OPPOSITION TO ANTERO RESOURCES CORPORATION'S MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Amy M. Smith, Esq.
Amy.smith@steptoe-johnson.com

W. Henry Lawrence
hank.lawrence@steptoe-johnson.com

Justin A. Rubenstein
Justin.rubentstein@steptoe-johnson.com

Shaina D. Massie
Shaina.massie@steptoe-johnson.com

Steptoe & Johnson PLLC
400 White Oaks Boulevard
Bridgeport, West Virginia 26330

            s/  William E. Ford III
           William E. Ford III
           (WV State Bar No.1246)