#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
#### AT CLARKSBURG

**RICHARD L. ARMSTRONG,**

      **Plaintiff,**

v.                                                                                      Civil Action No. 1:19-CV-173
                                                                                                    Hon. Judge Irene M. Keeley

**ANTERO RESOURCES CORPORATION,**

      **Defendant.**

#### REPLY IN SUPPORT OF ANTERO
#### RESOURCES CORPORATION'S MOTION TO DISMISS

### I.     INTRODUCTION

Defendant Antero Resources Corporation ("Antero") submits this reply in support of its motion to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court should dismiss Plaintiff's complaint because it fails to state a claim upon which relief may be granted. Plaintiff cannot rely on his response brief to overcome the fact that he failed to allege a complete contract between himself and Antero by omitting certain modifications from the complaint. Even if Plaintiff had alleged a complete contract, Plaintiff's breach of contract claim fails as a matter of law because the lease provisions Plaintiff cites as governing the time for royalty payments and the right to inspect records were superseded by subsequent lease modifications. In addition, West Virginia Code Section 37C-1-3 does not support a cause of action for royalties but rather creates a remedy for interest upon payments of royalty after the statutory periods. Because Plaintiff cannot state a breach of contract claim, Plaintiff cannot state a claim for breach of the implied covenant of good faith and fair dealing. Finally, Plaintiff cannot state a claim for breach of fiduciary duty because the parties do not share a fiduciary relationship. For these reasons, the Court should dismiss the complaint.

## II. ARGUMENT

### A. Plaintiff Does Not State an Adequate Claim for Breach of Contract Because Plaintiff Fails to Allege a Complete Contract.

Plaintiff fails to adequately plead a breach of contract claim because Plaintiff does not allege a complete contract between himself and Antero.[1] Rather, Plaintiff selects certain provisions from the Freeman Lease and 1925 Freeman Modification while ignoring subsequent modifications altogether. Plaintiff attempts to address the fact that he failed to allege a *complete* contract between himself and Antero by citing to provisions in the 2015 Armstrong Modification, which was not attached to or otherwise identified in the complaint. *See* ECF No. 8 at 3. Plaintiff, however, cannot correct his pleading deficiencies in his response to Antero's motion to dismiss, as "[i]t is well-established that parties cannot amend their complaints through briefing or oral advocacy." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (citing cases).

Plaintiff does not dispute that he must allege a complete contract. *See KBS Preowned Vehicles, LLC v. Revia, Inc.*, No. 1:13CV138, 2014 WL 12591890, at *2 (N.D. W. Va. Mar. 26, 2014) (holding the plaintiff's amended complaint failed to allege the existence of an enforceable contract, which was a necessary element of its contract claim); *Cather v. Seneca-Upshur Petroleum, Inc.*, No. 1:09-CV-139, 2010 WL 3271965, at *2 (N.D. W. Va. Aug. 18, 2010) (concluding that, to prevail on a breach of contract claim, "a plaintiff must make out a complete contract and allege a breach of its terms"); *Rodgers v. Sw. Energy Co.*, No. 5:16-CV-54, 2016 WL

---

[1] As a threshold matter, Plaintiff's request that this Court strike Antero's motion to dismiss under Federal Rule of Civil Procedure 12(f) is specious because Rule 12(f) applies to pleadings. Under Federal Rule of Civil Procedure 7, a motion to dismiss is not a pleading. *See* Fed. R. Civ. P. 7(a) (listing acceptable pleadings as "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer."). Nevertheless, Plaintiff's argument lacks merit, and Plaintiff's request is inappropriate.

3248437, at *2 (N.D. W. Va. June 13, 2016) (requiring plaintiffs to amend their complaint because the plaintiffs did not attach the lease at issue or identify the date, acreage, parties, any language regarding royalty provisions, the amounts paid or underpaid, or any other specific details regarding the contract).

Plaintiff has not alleged a complete contract. As discussed above, Plaintiff alleges breaches of and attaches only the underlying Freeman Lease and 1925 Freeman Modification. Plaintiff's complaint does not mention, let alone attach, the 1926 Freeman Modification, the 1936 Doak Modification, or the 2015 Armstrong Modification. As was the case in *KBS Preowned Vehicles* and *Cather*, Plaintiff does not allege the existence of a *complete* contract between himself and Antero. Because Plaintiff fails to attach these subsequent modifications of the Freeman Lease, it is impossible for this Court to determine whether Plaintiff alleges breaches of operative provisions of the contract, as amended, or whether Plaintiff has complied with his obligations under the subsequent modifications. This impossibility is underscored by the fact that Plaintiff's response vacillates between various instruments, referring first to a "1926 modification," ECF No. 8 at 2, and then later referring to the "1925 Freeman Modification," *id.* at 7. Accordingly, Plaintiff fails to put Antero on notice of a plausible claim for breach of contract, and this Court can only speculate as to what Antero's duties would be under the subsequent modifications of the Freeman Lease. Therefore, this Court should grant Antero's motion to dismiss Plaintiff's complaint.

      **B.**      **Plaintiff Cannot State a Claim for Breach of Contract Based on the Timing of Royalty Payments or Right to Inspect Antero's Records.**

Plaintiff cannot state a claim for breach of contract because the provision governing the time for royalty payments in the Freeman Lease and the provision governing the right to inspect records in the 1925 Freeman Modification were superseded by subsequent modifications. The inherent fallacy of Plaintiff's response to Antero's motion to dismiss can be captured in a single

3

sentence: "Absolutely no modification alters Antero's contractual requirements." *See* ECF No. 8 at 5. By definition, a modification alters contractual requirements. *See Modification*, *Black's Law Dictionary* (11th ed. 2019) ("A change to something; an alteration or amendment[.]").

As the West Virginia Supreme Court of Appeals recognized in *Thornsbury v. Cabot Oil & Gas Corp.*, 231 W. Va. 676, 749 S.E.2d 569 (2013), "[i]t is a well-established, fundamental principle of contract law that a valid, unambiguous written contract may be modified or superseded by a subsequent contract based on a valuable consideration." *Id.*, 749 S.E.2d at 573 (citing Syl. Pt. 1, *Lewis v. Dils Motor Co.*, 148 W. Va. 515, 135 S.E.2d 597 (1964)). Likewise, in *Consolidation Coal Co. v. Mineral Coal Co.*, 147 W. Va. 130, 126 S.E.2d 194 (1962), the West Virginia Supreme Court of Appeals recognized as follows:

> A mineral lease may be modified by agreement of the parties provided the modification is supported by a sufficient consideration; and the modification may consist of the new terms and as much of the old lease as the parties have agreed shall remain unchanged, in which case the terms and conditions of the original lease, so far as consistent with the modified contract, will remain in full force and effect and become incorporated in the modified contract.

*Id.*, 126 S.E.2d at 201 (citations omitted). *See also* Syl. Pt. 3, *Myers v. Carnahan*, 61 W. Va. 414, 57 S.E. 134 (1907) ("Where a new contract is made with reference to the subject-matter of a former contract, containing provisions clearly inconsistent with certain provisions of the original contract, the obligations of the earlier contract, in so far as they are inconsistent with the later one, will be abrogated and discharged, and the two contracts will be construed together, disregarding the provisions of the original which are inconsistent with those of the latter."); *see also* 58 C.J.S. *Mines and Minerals* § 298 (Sept. 2019 Update) ("The parties to an oil and gas lease may modify the lease by mutual consent, *and the rights and liabilities of the parties thereafter are controlled by the terms and conditions of the lease as modified*." (emphasis added)).

4

Plaintiff's contention that "the plain language in [the 2015 Armstrong Modification] ratifies the original requirements from the Freeman Lease and Modification" is specious for several reasons. *See* ECF No. 8 at 4. Throughout his response, Plaintiff makes much of the fact that the 2015 Armstrong Modification "adopt[s], ratif[ies], and confirm[s]" the Freeman Lease. *See* ECF No. 8 at 3, 5, 7. Plaintiff, however, ignores the fact that the 2015 Armstrong Modification adopts, ratifies, and confirms the Freeman Lease "*as amended.*" *See id.* (emphasis added). In pertinent part, the 2015 Armstrong Modification states as follows:

> For the same consideration recited above, each of the *undersigned* does hereby adopt, ratify, and confirm the Lease *as amended*, and does hereby grant, lease, and let, unto the Lessee therein and its successors and assigns, any and all interest in and to the lands described therein currently owned or that may hereafter be acquired, either by conveyance, devise, inheritance, or operation of law, and whether, vested, expectant, contingent or future, and in accordance with each and all of the provisions contained in the Lease *as amended* hereby, and each does hereby declare that the Lease is a *valid and subsisting oil and gas lease* and all of its provisions are binding upon the *undersigned* and shall extend to and be binding upon the heirs, executors, administrators, successors, and assigns of each of the undersigned.

ECF No. 7-4 at 4 (emphasis added).[2]

Plaintiff's reliance on this provision of the 2015 Armstrong Modification demonstrates a profound misunderstanding of common oil and gas lease provisions. Contrary to Plaintiff's assertion, the 2015 Armstrong Modification does not resurrect the stringent timelines for payment or right to access production records contained in the Freeman Lease or 1925 Freeman Modification. Rather, by stating that the Freeman Lease "is a *valid and subsisting oil and gas lease,*" the 2015 Armstrong Modification operates as a ratification insofar as to eliminate any questions about whether the Freeman Lease, which was originally executed more than a hundred

---

[2] Not only does Plaintiff ignore the phrase "as amended" in the 2015 Armstrong Modification he also ignores the fact that the 2015 Armstrong Modification states that the provisions of the Freeman Lease "are binding upon the *undersigned,*" i.e., Plaintiff. *See id.* Antero undertakes no obligations in this paragraph.

years ago, remains a valid lease decades into its secondary term, which is not at issue in this case. *See* 8 Williams & Meyers, *Oil and Gas Law*, *Manual of Oil and Gas Terms* (2018) (defining a "[r]atification of lease" as "[c]onduct which operates to revive a lease which has been terminated, *e.g.*, of a mineral deed or other instrument in which reference is made to the lease as being a valid, existing lease.").

Where the parties intend to extend the term of an underlying oil and gas lease, secondary sources have also recognized that "[t]here is no material difference between an extension and a renewal of an oil or gas lease.  An extension by agreement of the parties *has the same effect as a new lease* with immediate possession."  58 C.J.S. *Mines and Minerals* § 311 (Sept. 2019 Update) (emphasis added); *see also* 2 *Summers Oil and Gas* § 14:23 (3d ed. Nov. 2018 Update) ("The primary term of an oil and gas lease may be changed or extended by a valid agreement between the parties, but *such agreement is, in effect, a new lease or a modification of an existing one* and must satisfy the same requirements for validity and be executed with the same formalities as the original lease." (emphasis added)).  In this respect, the 2015 Armstrong Modification operates as a new lease between the parties, which is why Plaintiff cannot escape the fact that the bases for his breach of contract claim fail as a matter of law because the Freeman Lease and 1925 Freeman Modification were superseded by subsequent amendments.

Plaintiff also appears to suggest that the "Memorandum of Modification of Oil and Gas Lease," which is recorded in the Office of the Clerk of the County Commission of Tyler County in lieu of the 2015 Armstrong Modification, is further proof that the 2015 Armstrong Modification does not abrogate the provisions of the Freeman Lease or 1925 Freeman Modification.  *See* ECF No. 8 at 8.  This argument is also specious.  A recorded memorandum is intended to operate as public notice of an existing agreement, not a modification thereto.  *See* W. Va. Code § 40-1-8 ("In

lieu of the recording of a lease . . . , there may be recorded with like effect a memorandum of such lease, executed by all persons who are parties to the lease and acknowledged in the manner to entitle a conveyance to be recorded. . . . *Such memorandum shall constitute notice of only the information contained therein*." (emphasis added)). Plaintiff's breach of contract claim is therefore without merit.

Specifically, Plaintiff cannot state a claim for breach of contract based on the timing of royalty payments because the royalty provision of the Freeman Lease, which contained the language regarding the timing of payments, was superseded by subsequent modifications. Specifically, the royalty provision of the Freeman Lease states:

> In consideration of the premises, the said party of the second part covenants and agrees . . . [t]o pay One Hundred ($100.00) Dollars each three months in advance for the gas from each and every gas well drilled on said premises, the product from which is marketed and used off the premises, *said payment to be made on each well within sixty days after completion of well* and to be paid each three months thereafter while the gas from said well is used.

ECF No. 1-1 at 11 (emphasis added).

The addendum to the 2015 Armstrong Modification alters the royalty obligation contained in the Freeman Lease as follows:

> 1. OIL AND GAS ROYALTY. Lessee shall pay Lessor royalty of One Eighth (12.5%) of the amount realized by Lessee from the sale of any oil and gas present in and associated with any formations, horizons, strata or zones produced and sold by Lessee. For all purposes of Addendum, references to oil and gas or either or both of them shall mean oil, or gas, or both and all substances which are constituents of or produced with oil or gas, whether similar or dissimilar or produced in a gaseous, liquid, or solid state. It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form. In no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

ECF No. 7-4.

Plaintiff does not allege a breach of the 2015 Armstrong Modification. Rather, Plaintiff misreads Antero's motion to dismiss. At no point does Antero argue that the 2015 Armstrong Modification "allows for nonpayment" as Plaintiff suggests. *See* ECF No. 8 at 4. Rather, the royalty clause in the addendum to the 2015 Armstrong Modification supersedes the royalty provision contained in the Freeman Lease and preceding modifications thereto. This provision deletes the stringent timelines for payment. Antero never argued that the 2015 Armstrong Modification deleted its payment obligations. For these reasons, Plaintiff cannot state a claim for breach of contract based on the timing of royalty payments. Moreover, only a breach of contract can support a claim for royalties. West Virginia Code Section 37C-1-3 does not support a cause of action for royalties but only creates a remedy for interest upon payment of royalty after the statutory periods. *Cf.* West Virginia Code § 37C-1-1(b) (creating a civil cause of action for oil and gas operator's failure to provide certain information within sixty days of a valid, written request for same).

Likewise, Plaintiff cannot state a claim for breach of contract based on the right to inspect records because the royalty provision of the 1925 Freeman Modification, which contained the language regarding the right to inspect production records, also was superseded by subsequent modifications. Specifically, the royalty provision of the 1925 Freeman Modification states in pertinent part:

> [T]he party of the second part shall also furnish to the parties of the first part a true and correct statement of the entire amount of gas produced and saved from said leased premises during the preceding month, except the said two gas well which are now producing gas, which are not included in this agreement. *And in the event the parties of the first part are not satisfied with such statements of amount of gas delivered and sold from said premises, the parties of the first part, by themselves or their agent, shall have the right of access for and inspection of the original meter charts taken from said wells; and they may also inspect the statements furnished by the Company that purchases all the gas from said wells.* . . .

ECF No. 1-1 at 15 (emphasis added).

8

The addendum to the 2015 Armstrong Modification alters the right to access records as follows:

> 4. AUDIT. Lessor shall have the right to annually examine, audit, or inspect the books, records, and accounts of Lessee pertinent to the purpose of verifying the accuracy of the reports and statements furnished to Lessor, and for checking the amount of payments lawfully due Lessor. In exercising this right, Lessor shall give notice to Lessee of its intended audit by certified mail, and Lessee shall schedule a time for Lessor within thirty (30) days, and such audit shall be conducted during normal business hours at the office of Lessee at the sole cost and expense of Lessor, and in no case will Lessor be permitted to take documents or copies of documents outside Lessee's office.

ECF No. 7-4.

The audit clause in the addendum to the 2015 Armstrong Modification supersedes the right to access records contained in the royalty provisions of the 1925 and 1926 Freeman Modifications. As discussed above, Plaintiff does not allege a breach of the 2015 Armstrong Modification. Nor does Plaintiff so much as mention the audit clause contained in the addendum to the 2015 Armstrong Modification in his response to Antero's motion to dismiss. Moreover, the letter from Plaintiff's counsel dated April 12, 2019, references only the right to access records under the 1925 Freeman Modification and does not expressly invoke or otherwise comply with the provisions contained the audit clause of the 2015 Armstrong Modification, which is the applicable provision. *See* ECF No. 1-1 at 18.[3] Clearly, Plaintiff has audit rights which he has failed to exercise through no fault of Antero. For these reasons, this Court should grant Antero's motion to dismiss Plaintiff's complaint.

### C. Plaintiff Cannot State a Claim for Breach of the Covenant of Good Faith and Fair Dealing.

Plaintiff cannot state a claim for breach of the implied covenant of good faith and fair dealing implied in every contract under West Virginia law. *See Packard v. Antero Res. Corp.*, No.

---

[3] Plaintiff acknowledges in his response that he now has been paid royalties. *See* ECF No. 8 at 1.

9

1:18CV04, 2018 WL 2348398, at *3 n.3 (N.D. W. Va. May 23, 2018) ("West Virginia does not recognize a stand-alone claim for breach of the implied covenant of good faith and fair dealing."). In this action, Plaintiff simply has not stated sufficient facts that would establish a breach of duty pertaining to the timing of Plaintiff's royalty payments or the right to inspect records. As discussed above, Plaintiff cannot state a claim for breach of contract based on the timing of royalty payments because the timing for such payments originally set forth in the Freeman Lease was superseded by subsequent modifications. Additionally, Plaintiff cannot demonstrate a breach of the 1925 Freeman Modification because the right to inspect records also was superseded by subsequent modifications. Plaintiff cannot establish a breach of the implied duty of good faith and fair dealing because Plaintiff cannot claim any rights greater than those implied in the Freeman Lease and modifications thereto with respect to the payment of royalties or inspection of Antero's records. Moreover, Plaintiff cites no law in support of his position. For these reasons, Plaintiff's assertion that his claim for breach of the implied duty of good faith and fair dealing "stands among" his claims is without merit. *See* ECF No. 8 at 5. Therefore, this Court should grant Antero's motion to dismiss Plaintiff's complaint.

### D. Plaintiff Cannot State a Claim for Breach of Fiduciary Duties.

Plaintiff cannot state a claim for violation of fiduciary duties because, as a matter of law, the parties do not share a fiduciary relationship; thus, Antero does not owe Plaintiff any fiduciary duties. Plaintiff's "academic" ruminations on fiduciary duties and reliance on *Templeton v. Bockler*, 144 P. 405 (Or. 1914), *State v. Gautier*, 147 So. 240 (Fla. 1933), and *Kerrigan v. O'Meara*, 227 P. 819 (Mont. 1924), are misplaced. Plaintiff does not acknowledge, let alone attempt to distinguish, controlling law on this issue. For more than a century, the West Virginia Supreme Court of Appeals has recognized that an oil and gas lease does not give rise to any special

10

or fiduciary relationship between an oil and gas lessee and lessor.  For example, in *Grass v. Big Creek Development Co.*, 75 W. Va. 719, 84 S.E. 750, 753 (1915), the Court explained:

> Where the object of the operations contemplated by an oil and gas lease is to obtain a benefit or profit for both lessor and lessee, . . . both are bound by the standard of what, in the circumstances, would be reasonably expected of operators of ordinary prudence, having regard to the interests of both.

*Id.*, 84 S.E. at 753.  *See also Corder v. Antero Res. Corp.*, 322 F. Supp. 3d 710, 720 (N.D. W. Va. 2018) (granting defendant's motion to dismiss breach of fiduciary duty claim in royalty case); *Fout v. EQT Prod. Co.*, No. 1:15-CV-68, 2015 WL 3755934, at *2 (N.D. W. Va. June 16, 2015) (same); *Leggett v. EQT Prod. Co.*, No. 1:13-CV-4, 2015 WL 1212342, at *3 (N.D. W. Va.  Mar. 17, 2015) (same); *Cather v. Seneca-Upshur Petroleum, Inc.*, No. 1:09-CV-139, 2010 WL 3271965, at *5 (N.D. W. Va. Aug. 18, 2010) (same).

Plaintiff's contention that Antero had the obligation to act as his fiduciary is baseless.  Moreover, Plaintiff's claim that his so-called "right to access and inspect" Antero's production records is "[t]he only way to assure this duty is met" is likewise unsupported.  *See* ECF No. 8 at 7.  As has been the case for more than a century in West Virginia, Antero is in no way obligated to subordinate its interests to Plaintiff's interests.  Rather, as this Court repeatedly has held, Plaintiff is owed only a duty of ordinary prudence.  Accordingly, Plaintiff cannot establish a fiduciary relationship with Antero because an oil and gas lessee owes no duty to lessors beyond one of ordinary prudence under West Virginia law.  Because Plaintiff cannot, as a matter of law, establish a fiduciary relationship, Plaintiff cannot state a claim for violation of fiduciary duties.  Therefore, this Court should grant Antero's motion to dismiss Plaintiff's complaint.

**III. CONCLUSION**

For all of the foregoing reasons, the Court should grant Antero Resources Corporation's Motion to Dismiss and enter an order dismissing the complaint and the entire action with prejudice and awarding its costs and fees incurred in defense.

|  |  |
|---|---|
| | */s/ Amy M. Smith* |
| | W. Henry Lawrence (WV State Bar #2156) |
| | hank.lawrence@steptoe-johnson.com |
| | Amy M. Smith (WV State Bar #6454) |
| | amy.smith@steptoe-johnson.com |
| | Justin A. Rubenstein (WV Bar #9974) |
| | justin.rubenstein@steptoe-johnson.com |
| | Shaina D. Massie (WV State Bar #13018) |
| | shaina.massie@steptoe-johnson.com |
| STEPTOE & JOHNSON PLLC | 400 White Oaks Boulevard |
| Of Counsel | Bridgeport, WV 26330 |
| | (304) 933-8000 |
| | |
| | Attorneys for Defendant Antero Resources Corporation |

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of October 2019, I electronically filed the foregoing "Reply in Support of Antero Resources Corporation's Motion to Dismiss" with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following CM/ECF participants:

> William E. Ford, Esquire
> clarksburgwvlawyer@gmail.com
> Ford Law Office
> 217 East Main Street
> Clarksburg, WV 26301

*/s/ Amy M. Smith*
Amy M. Smith (WV Bar #6454)

10285895.v1