**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
Clarksburg Division**

**RICHARD L. ARMSTRONG,**

        *Plaintiff*,

v.                                           Civil Action No.: 1:19-CV-173
                                                   (Honorable Judge Keeley)

**ANTERO RESOURCES CORPORATION,**

        *Defendant*.

**AMENDED COMPLAINT**

Plaintiff Richard L. Armstrong ("Plaintiff"), by and through the undersigned counsel, hereby sets forth his Complaint as alleged below. Plaintiff seeks, *inter alia*, specific performance of the "audit" provisions contained in a leasehold contract, which obligates Defendant Antero Resources Corporation to (1) provide the right of access to, and inspection of, the original meter charts taken from all wells if the plaintiffs are not satisfied with statements of the amount of gas delivered and sold; (2) provide Plaintiff with the opportunity to inspect any and all statements furnished by the purchasers of gas from the subject wells; and (3) pay for all gas used by it off premises, which carries the attendant requirement to provide information as to where that gas was used, who used it, and how it was paid for.

**I. PARTIES**

1.    Plaintiff Richard L. Armstrong is a resident and a citizen of Harrison County, West Virginia.

2.    Defendant Antero Resources Corporation ("Antero" or "Defendant") is a Delaware corporation with its principal office address at 1615 Wynkoop Street, Denver, Colorado 80202 and it does business in Doddridge County, West Virginia.

3. Defendant Antero Resources Corporation is registered with the Office of the West Virginia Secretary of State as a foreign corporation and its agent for service of process is CT Corporation System, 1627 Quarrier St, Charleston, West Virginia 25311-2124.

4. Plaintiff individually owns a one-sixteenth (1/16) interest in the oil and gas interests underlying two tracts of farm and wooded property of approximately 545 Acres and 60 Acres situate on the waters of Nutters Fork, in West Union Magisterial District, Doddridge County, West Virginia as described in that certain deed dated August 27, 1951 from J. F. Summers, Trustee of the Estate of Joseph Freeman, to Truman Gore, Fitzhugh Reynolds, and others, and of record in the Office of the Clerk of the County Commission of Doddridge County, West Virginia (hereinafter referred to as "Clerk's Office") in Deed Book 121 at Page 151.

## II.  OWNERSHIP CHAIN OF TITLE

5. By deed dated August 27, 1951, and recorded in said Clerk's Office in Deed Book 121 at Page 151, J. F. Summers, Trustee of the Estate of Joseph Freeman, conveyed to each of Truman E. Gore, C. Burke Morris, S. Austin Smith, Ona Kerns, Fitzhugh Reynolds, Will E. Morris, John R. Morris, N.M. Welch and B.F. Welch a one-eighth (1/8) interest in "All of the oil, gas and other minerals, together with all the usual and necessary leasing and mining rights for the production and marketing of all the said oil, gas and other minerals conveyed, within and underlying twelve parcels of land situate on the waters of Middle Island Creek and Nutters Fork, in West Union District." The property subject of this Amended Complaint is described therein as parcels or tracts "First" through "Ninth".

6. Fitzhugh Reynolds died on November 7, 1970 and by Will recorded in Will Book 9 at Page 556 he devised his oil and gas interests to his widow Kate Hardin Reynolds and his children Thomas G. Reynolds and Peggy Armstrong in equal shares.

7. Kate Hardin Reynolds died on July 22, 1984, and by Will recorded in Will Book 65 at Page 518 left her estate to her children Thomas G. Reynolds and Peggy Armstrong as her heirs in equal shares.

8. Peggy Armstrong died on June 20, 2011 and by Will recorded in Will Book 54 at Page 722 she left as her sole heir her husband Eugene Armstrong.

9. Eugene Armstrong died on August 4, 2015 and by Will recorded in Will Book 105 at Page 164 he left as his sole heir his son, Plaintiff Richard L. Armstrong.

### III. LEASE CHAIN OF TITLE

10. Joseph Freeman and Flora Freeman, his wife, predecessors in title to Plaintiff's interests in the above described tracts, entered into an oil and gas Lease dated April 15, 1913, and recorded said Doddridge County Clerk's Office in Lease Book 27 at Page 233 with G. H. Trainer and J.E. Trainer ("Freeman Leasehold") for the "1st Tract 540 Acres more or less and 2nd Tract 60 Acres more or less, aggregating 600 acres, more or less, which the Lessees agreed to pay to the Lessors "1/8 part of all oil produced and saved from the leased premises; and 2nd to pay One Hundred ($100.00) each three months in advance for the gas from each and every gas well drilled on said premises, the product from which is marketed and used off the premises, said payment to be made on each well within sixty days after completion of well and to be paid three months thereafter while the gas from said well is used." (Hereinafter referred to as the "Freeman Lease," a copy of which is attached hereto as **Exhibit A.**)

11. By Deed and Agreement dated February 23, 1917 and recorded in Lease Book 34 at Page 247 , George G. Trainer and Viola C.D. Trainer, his wife and J.E. Trainer and Tressie May Trainer, his wife, and George H. Trainer and J.E Trainer, partners, trading under the firm name of Sun Gas Company, transferred and assigned to W. W. Hepburn 63 leases, including Lease No. 47

3

for the Joseph Freeman 540 and 60 acres tracts.

12.     By Deed and Agreement dated February 23, 1917 and recorded in Lease Book 34 at Page 256, W. W. Hepburn transferred and assigned to Eastern Petroleum Company 63 leases, including Lease No. 47 for the Joseph Freeman 540 and 60 acres.

13.     By Agreement dated March 18, 1925, Joseph Freeman and Flora Freeman with G. H. Trainer and J.E. Trainer, and the then current assignee of the Freeman Lease, Clifton Oil & Gas Company, modified the oil and gas Lease dated April 15, 1913 (hereinafter referred to as "Freeman Lease Modification" a copy of which is attached hereto as **Exhibit B**) by changing the compensation and related terms provided in the lease dated April 15, 1913 wherein it was amended as follows, in pertinent part:

> "NOW, THEREFORE, in consideration of the premises, it is agreed by and between the parties hereto that from and after the date hereof, the party of the second part shall pay and deliver unto the parties of the first part, as full consideration for the gas from each and every gas well which may be hereafter drilled upon said premises, and from all the oil wells now drilled upon said premises, or which may be hereafter drilled upon said premises, the equal one-eighth (1/8) part of all the natural gas which may be produced and marketed from said wells, or any of them, both gas wells and oil wells, (except the two gas wells now producing gas on said premises), so long as the party of the second part, its successors or assigns, shall market the gas from said wells, or any of them, off the premises.
> It is further agreed by and between the parties hereto, that the parties of the first part shall sell to the party of the second part and that the party of the second part shall purchase from the parties of the first part all the said one-eighth of the said gas produced and marketed from said premises, at the same price and upon the same terms and conditions as all the gas from said leased premises is now being marketed, or shall be hereafter marketed by the party of the second part, its successors or assigns; and settlement shall be made monthly, on or before the last day of every month, for the said royalty gas delivered to the credit of the parties of the first part during the preceding month; and the party of the second part shall also furnish to the parties of the first part a true and correct statement of the entire amount of gas produced and saved from said leased premises during the preceding month, except the said two gas well which are now producing gas, which are not included in this agreement.   And in the event the parties of the first part are not satisfied with such statements of amount of gas delivered and sold from said

premises, the parties of the first part, by themselves or their agent, shall have the right of access for and inspection of the original meter charts taken from said wells; and they may also inspect the statements furnished by the Company that purchases all the gas from said wells. Second party shall pay for all gas used by it off said premises...."

14. By Agreement dated May 15, 1926, recorded in said Clerk's Office in Lease Book 42 at Page 323 between Joseph Freeman and Flora Freeman and Clifton Oil & Gas Company, modified terms of the Lease described above in Paragraph 10 which are not pertinent to the allegations of this Complaint.

15. By Agreement dated October 12, 1936, recorded in said Clerk's Office in Lease Book 52 at Page 204 between John Doak and U.G. Summers and the Clifton Oil & Gas Company modified terms of the Lease described above in Paragraph 10 which are not pertinent to the allegations of this Complaint.

16. By Deed and Assignment dated June 28, 1948 and recorded in Lease Book 56 at Page165 Clifton Oil & Gas Company transferred to Quaker State Oil Refining Corporation various leaseholds including the Joseph Freeman 540 and 60 acres leasehold.

17. By Assignment dated February 12, 1986 and recorded in Lease Book 145 at Page 492, HND Oil & Gas Company transferred to Quaker State Oil Refining Corporation all right, title and interest in all formations lying 50 feet below the Gordon formation in the Joseph Freeman Lease.

18. By Assignment dated February 12, 1986 and recorded in Lease Book 145 at Page 495, J D & M Investments, Inc. transferred to Quaker State Oil Refining Corporation all right, title and interest in all formations lying 50 feet below the Gordon formation in the Joseph Freeman Lease.

19. By Assignment dated May 30, 1986 and recorded in Lease Book 146 at Page 692,

HND Oil & Gas Company transferred to Quaker State Oil Refining Corporation all right, title and interest in all formations lying 50 feet below the Gordon formation in the Joseph Freeman Lease.

20. By Assignment dated January 22, 1990 and recorded in Lease Book 159 at Page 474, Quaker State Corporation (f/k/a Quaker State Oil Refining Corporation) transferred to QSE&P, Inc. all right, title and interest in all formations lying 50 feet below the Gordon formation in the Joseph Freeman Lease.

21. By Assignment, Conveyance and Bill of Sale dated August 8, 1995 and recorded in Lease Book 175 at Page 466, Quaker State Corporation, QSE&P, Inc., Quaker State 1986-2 Drilling Fund, L.P., Quaker State 1987-1 Drilling Fund, L.P., Quaker State 1988-1 Drilling Fund, L.P., and Quaker State 1989-1 Drilling Fund, L.P. transferred to Belden & Blake Corporation all right title and interest in the Joseph Freeman Lease.

22. By Assignment, Conveyance and Bill of Sale dated December 1, 1996 and recorded in Lease Book 181 at Page 114, Belden & Blake Corporation conveyed to Peake Energy, Inc. all its right, title and interest in those leases conveyed in LB 175 at Page 466, including the Joseph Freeman Lease.

23. By Assignment, Conveyance and Bill of Sale dated December 21, 2012 and recorded in Lease Book 285 at Page 84, EXCO Production Company (f/k/a Peake Energy, Inc.), EXCO Resources, LLC, and BG Production Company transferred to Antero Resources Appalachian Corporation (now known as Antero Resources Corporation) various leaseholds in Doddridge County including the Joseph Freeman Lease.

24. By Modification of Oil and Gas Lease dated August 28, 2015 (unrecorded), between Eugene H. Armstrong Estate, by Richard L. Armstrong, and Defendant Antero ratified the Lease described above in Paragraph 10 and supplemented the terms of said Lease and

subsequent amendments by the following paragraph of the Addendum to Modification of Oil and Gas Lease as follows:

> 4. AUDIT. Lessor shall have the right to annually examine, audit, or inspect the books records, and accounts of Lessee pertinent to the purpose of verifying the accuracy of the reports and statements furnished to the Lessor, and for checking the amount of payments lawfully due Lessor.  In exercising this right, Lessor shall give notice to Lessee of its intended audit by certified mail, and Lessee shall schedule a time for Lessor within thirty (30) days, and such audit shall be conducted during normal business hours at the office of Lessee at sole cost and expense of Lessor, and in no case will Lessor be permitted to take documents or copies of documents outside Lessor's office.

This modification agreement is attached hereto as **Exhibit C**.

25. The documents described above in Paragraphs 10-24 above constitute the complete oil and gas lease contract between Plaintiff and Antero.

## IV.   **FACTS**

26. Since at least July 2016, Antero has produced gas from the Freeman Leasehold, from the following vertical wells, with royalty payments made to Plaintiff commencing in October 2016:

| | |
|---|---|
| Freeman 1 | API   #47-017-03784 |
| Freeman 2 | API   #47-017-03856 |
| Freeman F 16 | API   #47-017-05096 |
| Freeman Joseph 1 | (unknown) |
| Freeman Joseph 2 | (unknown) |

27. According to the Declarations of Pooling filed by Antero with the Office of the Clerk of the County Commission of Doddridge County, West Virginia, the Freeman Leasehold is a part of the Chalk, Michels, Warrior, Buffett, Jimmy, Smithers, and Taunus Units.

28. According to the West Virginia Department of Environmental Protection, Oil and

7

Gas Division, website, Antero has been producing oil and gas from the following horizontal wells operating since at least July 2018:

| | |
|---|---|
| Michels Unit Well 1H | API #47-017-06811 |
| Warrior Unit Well 1H | API #47-017-06828 |

29. According to the West Virginia Department of Environmental Protection, Oil and Gas Division website, Antero has been producing oil and gas from the following horizontal wells operating since at least August 2018:

| | |
|---|---|
| Michels Unit Well 2H | API #47-017-06812 |
| Warrior Unit Well 2H | API #47-017-06808 |

30. According to the West Virginia Department of Environmental Protection, Oil and Gas Division website, Antero has been producing oil and gas from the following horizontal wells operating since at least October 2018:

| | |
|---|---|
| Chalk Unit Well 1H | API #47-017-06818 |
| Chalk Unit Well 2H | API #47-017-06819 |

31. According to the West Virginia Department of Environmental Protection, Oil and Gas Division website, Antero has been producing oil and gas from the following horizontal wells operating since at least November 2018:

| | |
|---|---|
| Buffett Unit Well 1H | API #47-017-06847 |
| Buffett Unit Well 2H | API #47-017-06848 |
| Taunus Unit Well 1H | API #47-017-06840 |
| Taunus Unit Well 2H | API #47-017-06841 |
| Taunus Unit Well 3H | API #47-017-06842 |

| | |
|---|---|
| Smithers Unit Well 1H | API  #47-017-06845 |
| Smithers Unit Well 2H | API  #47-017-06844 |
| Jimmy Unit Well 1H | API  #47-017-06838 |
| Jimmy Unit Well 2H | API  #47-017-06790 |
| Jimmy Unit Well 3H | API  #47-017-06839 |

32. In the Assignment, Conveyance and Bill of Sale described above in Paragraph 23 above, Antero as Assignee agreed on page 3 as follows:

ASSUMED OBLIGATIONS
Without limiting Assignee's rights under the special warranty of title set forth above, Assignee hereby assumes and agrees to fulfill, perform, pay and discharge (or cause to be fulfilled, performed, paid or discharged) all of the Assumed Liabilities and the Assumed Environmental Liabilities.

33. By letter dated April 12, 2019 from counsel for the Plaintiff to Antero, Plaintiff made demand for payment of royalties and documentation supporting Antero's calculations under the lease provisions described in Paragraphs 13 and 24 above. (See copy of letter attached hereto as **Exhibit D**).

34. By letter dated May 17, 2019, Antero by Steptoe Johnson attorney Justin A. Rubenstein stated, among other things:

"Upon review of the 1913 lease and subsequent modifications, including those executed by Richard Armstrong and Donald Reynolds, we do not believe the payment provisions you cited from the 1913 lease and the 1925 modification remained applicable where the lease royalty provision has been further modified by modifications executed in 2014 and 2015 by Mr. Reynolds and Mr. Armstrong, respectively."

(See copy of letter attached hereto as **Exhibit E**)

35. By check and royalty statement dated July 26, 2019, Defendant purportedly paid Plaintiff the royalties due Plaintiff, plus interest, for production from the Freeman Leasehold.

9

36. On August 8, 2019, Plaintiff and his cousin, Donald R. Reynolds, jointly filed a Complaint in the Circuit Court of Doddridge County, West Virginia seeking payment of royalties due to Plaintiff and specific performance of the provisions of the Oil and Gas Lease contract set forth in Paragraph 13 above. The Clerk of the Circuit Court of Doddridge County separated the Complaint into two separate actions, Civil Action Nos. 19-C-17 (Richard L. Armstrong) and 19-C-18 (Donald R. Reynolds).

37. On September 6, 2019, Antero removed the Complaint filed in Doddridge Circuit Court to this Court.

38. By letter dated August 28, 2019, (see copy of letter attached hereto as **Exhibit F**) Antero by Steptoe Johnson attorney Justin A. Rubenstein advised counsel for Plaintiff of the payment of the royalties and interest due Plaintiff and requested dismissal of the Complaint, but failed to address Plaintiff's request for documentation supporting Antero's calculations under the lease provisions described in Paragraphs 13 and 24 above, as described in Plaintiff's letter to Antero dated April 12, 2019 and Plaintiff's Complaint filed in Doddridge Circuit Court.

39. By letter dated September 4, 2019 from counsel for Plaintiff to attorney Rubenstein, Plaintiff reiterated the request for the previously requested information as he was not satisfied with the statements of amounts of oil and gas produced, delivered and sold from the subject premises. (See copy of letter attached hereto as **Exhibit G**)

40. By letter dated September 11, 2019, attorney Rubenstein again asserted that the lease provisions described above were replaced with the Modifications signed by Plaintiff and Donald Reynolds, and further advised, among other things, and for the first time, that:

> Antero sells gas to dozens of buyers and determines a weighted average sales price ("WASP") for gas sales, so your request for sales information is overly broad. You have

> not identified anything in the royalty statements received by your clients that they are dissatisfied with for the wells that are now in pay. Antero remains willing to work with you to resolve this matter prior to engaging in protracted litigation. In order to do so, will you specify what your clients are dissatisfied with and what information your clients are requesting?

(See copy of letter attached hereto as **Exhibit H**)

41. By letter dated November 27, 2019 from counsel for Plaintiff to attorney Rubenstein, Plaintiff advised that he would accept the daily production records as the equivalent of the meter charts and reiterated the request for the previously requested information, specifically requesting today's equivalent of the purchasers' statements which would include any and all documents and information which Antero utilizes in determining the WASP upon which it sets the per MCF price set forth on the royalty statements provided to Plaintiff.  (See copy of letter attached hereto as **Exhibit I**)

42. Upon information and belief, the WASP as calculated by Antero is weighted in favor of the interests of Antero and against the interests of Plaintiff, thereby causing Plaintiff a loss of royalties to which he is entitled.

43. Plaintiff is paid royalties by Antero on production from at least 95 wells and on information and belief Plaintiff has suffered a loss of royalties from production on these wells as a result of the WASP as calculated by Antero.

44. Antero has improperly taken deductions on royalty payments for production from the wells identified in Paragraphs 26-31 above for expenses such as "shrink" without any authorization.

45. Plaintiffs and his predecessors in title have performed all obligations pursuant to the subject Lease Agreements and Modification of Oil and Gas Lease, including fulfilling his

duties and obligations under such lease agreements by maintaining title to the related properties.

46. Antero is the only entity which holds the information necessary to determine the propriety and accuracy of Plaintiff's royalty payments.

## V. CLAIMS FOR RELIEF

### Count I – Breach of Contract/Demand for Specific Performance to Enforce the Audit Provisions

47. Plaintiff re-alleges and incorporates by reference all of the allegations contained in the preceding paragraphs of the Complaint as if set forth verbatim herein.

48. Plaintiff has a right of access to certain documents and/or information if he is not satisfied with the statements provided by Antero:

> And in the event the parties of the first part are not satisfied with such statements of amount of gas delivered and sold from said premises, the parties of the first part, by themselves or their agent, shall have the right of access for an inspection of the original meter charts taken from said wells; and they may also inspect the statements furnished by the Company that purchases all the gas from said wells.

See Exhibit B, ¶ 4.

49. Plaintiff is not satisfied with the statements provided by Antero in that no documents and/or information is provided to show how Antero calculates the WASP upon which it sets the per MCF price set forth on the royalty statements provided to Plaintiff.

50. Antero has breached the terms of the Oil and Gas Lease Contract by refusing the request made to Antero by letter dated April 19, 2019 to provide documentation supporting its calculations of production from the wells described above in Paragraphs 26-32 above.

51. Due to Antero's refusal to acknowledge the application of the lease requirements described above in Paragraph 13 and Antero's refusal to provide documentation supporting its calculations of production from the wells described above in Paragraphs 26-31 above, Plaintiff

must seek this Court's intervention to require Antero to specifically perform its obligations under said Lease Agreements.

## Count II – Failure to Properly Account for Royalties

52. Plaintiff re-alleges and incorporates by reference all of the allegations contained in the preceding paragraphs of the Complaint as if set forth verbatim herein.

53. Antero has an affirmative contractual duty to account for and pay Plaintiff the true and correct royalty due to him by virtue of the above-described Freeman Leasehold, the contractual duty of good faith and fair dealing implied in all contracts, and by virtue of its duty of ordinary prudence and responsibility as an oil and gas lessee who is responsible for the production, marketing and sales of natural gas, oil casinghead gas and/or by products.

54. Antero intentionally violated its contractual duties and duty of ordinary prudence by sending statements and/or accountings to Plaintiff which omitted, concealed and or misrepresented information used to determine the amount of money received by Antero for the gas produced from the above described wells.

55. Plaintiff is entitled to an accounting of all proceeds from the sales all of the oil, gas and other by-products of the wells described above in Paragraphs 26-31 above, and any deductions therefrom made by Antero.

## Count III – Breach of Contract for Failure to Pay Royalties Due Plaintiff

56. Plaintiff re-alleges and incorporates by reference all of the allegations contained in the preceding paragraphs of the Complaint as if set forth verbatim herein.

57. Antero has an affirmative contractual duty to account for and pay Plaintiff the true and correct royalty due to him by virtue of the above described Freeman Leasehold contract, the

contractual duty of good faith and fair dealing implied in all contracts, and by virtue of its duty of ordinary prudence and responsibility as an oil and gas lessee who is responsible for the production, marketing and sales of natural gas, oil casinghead gas and/or by products.

58.     Antero has an affirmative contractual duty to pay to Plaintiffs the true and correct royalty due them by virtue of the Freeman Lease and Freeman Lease Modification and/or by virtue of the duty of good faith and fair dealing in all contracts under West Virginia common law, and by virtue of the duty of ordinary prudence and responsibility as the lessee in any oil and gas lease who assumes the duty of handling the sales and accounting functions of the parties.

59.     Upon information and belief, Antero has breached the terms of the subject Lease Agreements by failing to pay Plaintiff the royalties he is owed from the production of the wells described in Paragraphs 26-31 above utilizing the WASP determined by Antero.

60.     The lease contract between Plaintiff and Antero does not allow for deductions from the gross revenue for expenses of the wells, transportation of gas, or for any other reason in calculating the royalties due Plaintiff.

61.     By wrongfully making the deductions from payment of royalties due Plaintiff as described above, Antero has breached the terms of the lease contract between them.

62.     Plaintiff is entitled to damages for the wrongful deductions withheld and taken from his royalty payments.

## VI.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter Judgment against Defendant Antero Resources Corporation providing the following relief:

A.     An order requiring Antero to account for all proceeds from the sale of the oil, gas and other by-products from the wells described in Paragraphs 26-31 above and for all expenses

taken therefrom in calculating royalties owed to Plaintiff.

  B.  An order requiring Antero to grant the Plaintiff the right of access to and inspection of the original meter charts taken from said wells; and to allow Plaintiff to inspect the statements furnished by anyone that purchases gas from said wells;

  C.  Injunctive relief enjoining Antero from improperly refusing to allow Plaintiff to inspect original meter charts taken from the subject wells and/or not allowing Plaintiff to inspect the statements furnished by any Company that purchases all the gas from said wells;

  D.  Injunctive relief requiring Antero to identify all contracts for all gas used by it off said premises for any purpose whatsoever, including the manufacture and production of natural gas liquids and the use of the gas by its affiliates;

  E.  Actual and compensatory damages from Antero;

  F.  Award Plaintiff's attorneys' fees, costs and expenses;

  G.  Award pre-judgment and post-judgment interest; and

  H.  Award such other and further relief as this Court deems proper and just.

  **PLAINTIFF DEMANDS A TRIAL BY JURY FOR ALL ISSUES SO TRIABLE.**

              **RICHARD L. ARMSTRONG,**
              **Plaintiff**

              **By Counsel**

/s/ Jonathan R. Marshall
Jonathan R. Marshall (WVSB #10580)
Victor S. Woods (WVSB #6984)
**BAILEY & GLASSER, LLP**
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
jmarshall@baileyglasser.com
vwoods@baileyglasser.com

/s/ William E. Ford III
William E. Ford III (WVSB # 1246)
**FORD LAW OFFICE**
217 East Main St.
Clarksburg, WV 26301
Telephone: (304) 626-3116
Facsimile: (304) 626-3300
clarksburgwvlawyer@gmail.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2020, I electronically filed the foregoing "Amended Complaint" with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following CM/ECF participants:

> W. Henry Lawrence
> Amy M. Smith
> Justin A. Rubenstein
> Shaina D. Massie
> Steptoe & Johnson PLLC
> 400 White Oaks Boulevard
> Bridgeport, WV    26330

/s/ Jonathan R. Marshall
Jonathan R. Marshall