1                UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF WEST VIRGINIA

3  RICHARD L. ARMSTRONG,

4        Plaintiff,

5                        CIVIL ACTION NO.

6                          1:19CV173

7  and

8  DONALD R. REYNOLDS,

9        Plaintiff,

10                     CIVIL ACTION NO.

11                    1:19CV174

12     vs.

13  ANTERO RESOURCES CORPORATION,

14        Defendant.

15                   - - -

16     Proceedings had in the TELEPHONIC SCHEDULING CONFERENCE of

17  the above-styled action on December 11, 2019, before the

18  HONORABLE IRENE M. KEELEY, SENIOR JUDGE, at Clarksburg, West

19  Virginia.

20                   - - -

21                APPEARANCES:

22    On Behalf of the Plaintiffs:

23        WILLIAM E. FORD, III
           Ford Law Office
24        217 East Main Street
           Clarksburg, West Virginia  26301

25

1                    APPEARANCES (CONTINUED):

2       On Behalf of the Defendant.

3            JUSTIN RUBENSTEIN
             SHANIA MASSIE
4            W. HENRY LAWRENCE
             Steptoe & Johnson, PLLC
5            400 White Oaks Boulevard
             Bridgeport, West Virginia  26330

6
        Proceedings recorded utilizing realtime translation.
7       Transcript produced by computer-aided transcription.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                       P R O C E E D I N G S

 2              (Wednesday, December 11, 2019, at 2:31 P.M.)

 3              THE COURT:  Good afternoon.  This is Judge Keeley,

 4    and this is the scheduling conference in Armstrong versus

 5    Antero Resources, Corp., 1:19CV173, and Reynolds versus Antero

 6    Resources, Corp., 1:19CV174.

 7           Could counsel, beginning with plaintiffs' counsel, note

 8    their appearance, please.

 9              MR. FORD:  William Ford, representing both

10    plaintiffs, in both cases.

11              THE COURT:  Thank you.

12              MR. RUBENSTEIN:  Justin Rubenstein, and also on the

13    line are Hank Lawrence and Shania Massie, for Antero Resources

14    Corporation.

15              THE COURT:  All right.  Thank you.  Good afternoon to

16    all counsel.  This case has pending motions -- these cases, I

17    should say, have pending motions to dismiss.  And I'd like to

18    take those up.  I'm assuming both sides are ready to address

19    the issues.

20              MR. RUBENSTEIN:  Yes, Your Honor.

21              THE COURT:  Mr. Ford.

22              MR. FORD:  Yes, Your Honor.

23              THE COURT:  Okay.  Thank you.  All right.  Now, the

24    case is here under 28, U.S.C., 1332, diversity jurisdiction.

25    The amount in controversy exceeds $75,000.  Antero is moving to
```

1    dismiss in both cases based on failure to state a claim, and

2    plaintiffs have opposed the motion and argue that each and

3    every representation has no basis in either law or fact.  But I

4    think their arguments that have been raised are more colorable

5    than that, Mr. Ford, and we need to take them up.

6           Now, I am looking at the first allegation of failure

7    to plead a complete contract.  And, Mr. Ford, Antero is

8    contending that the plaintiffs have failed to state a plausible

9    claim for relief because they have not alleged a complete

10   contract.  That is based on the fact that the complaints attach

11   the 1913 Freeman Lease, and the 1925 Lease Modification.  There

12   -- you have not, on their behalf, attached three subsequent

13   modifications, which would include the 1926 Modification, the

14   1936 Doak Modification, and the 2015 Armstrong Modification,

15   and the 2014 Reynolds Modification.  And the argument is that

16   without them, Antero believes that I cannot determine whether

17   the plaintiffs have a breach of operative provisions claim,

18   which they can pursue pursuant to the 1913 Freeman Lease and

19   the 1925 Lease Modification, because they're contending that

20   the leases were amended by the subsequent modifications.

21          What's your response to that?

22          MR. FORD:  Well, Your Honor, the two modifications --

23   the modification in the assignment chain after the two Freeman

24   -- the Freeman Lease, and the original Freeman Lease

25   Modification after that, I do believe were modifications that

1    did not affect the language or the requirement of the --

2    modification -- the first two signed by Joseph Freeman, who was

3    the owner of a hundred percent of the oil and gas rights at the

4    time that these two modifications were executed.

5              Other modifications that they've referenced are just

6    in between the two transferees of the assignment assignee, the

7    ultimate assignee of the contract right.

8              Now, I will -- I can say, Judge, that I attached, as

9    part of -- and alleged as part of the contract, the alleged

10   modification.  I also attached the Memorandum of Modification

11   for -- that Mr. Armstrong signed, because we have not been able

12   to locate the original signed modification agreement that

13   Antero referenced.  Antero did not, certainly, allege those

14   documents in their motion, but they do exist.  I was counting

15   on discovery to get a copy of Mr. Armstrong's original

16   modification, as opposed to the memo, Memorandum of

17   Modification that's recorded.

18             So, Your Honor, I think, in all respect, I have

19   alleged the contract appropriately.  And, certainly, we have

20   alleged the pertinent provisions that none of the

21   modifications, I believe, affect.  Mr. Reynolds' modification

22   would not -- I do not believe would change any of the terms of

23   the original Freeman Lease, and the Freeman Modification,

24   except insofar as those specific items that are mentioned in

25   that Modification of Oil and Gas Lease.  And, in fact, in my

1  complaint, I allege the language in the Antero Modification of

2  Oil and Gas Lease that the -- in that document, the lessor

3  ratified and confirmed the leases that are referenced.  And the

4  lease that is referenced is the original Joseph Freeman Lease.

5  I believe we have well pled our contract action petition, you

6  know, to get by this motion to dismiss.

7           Certainly, if there is more particular language that

8  it looks like I would need to include in the complaint

9  language, I would eventually ask the Court for leave to amend

10  that complaint.  But I'm not sure we have that situation here,

11  Your Honor.

12           THE COURT:  All right.

13      What's Antero's response to that?

14           MR. RUBENSTEIN:  First off, Your Honor, the full

15  modifications were attached to Antero's respective motions to

16  dismiss.  So Mr. Ford should have those now, if he didn't

17  before.

18           And, secondly, as to the point that the 2014, 2015

19  modifications ratified the lease, that's true, but it ratified

20  the lease, as amended.

21           And to the substance, Your Honor, the 2014 and 2015

22  modifications go directly to the point of Mr. Ford's complaint.

23  And to split it up, there's royalties, and then there's the

24  audit provision, I think, is really what we're talking about.

25  And without doubt, the royalties provision was modified in both

1   the Reynolds and the Armstrong modifications.  The Armstrong

2   modification contains a further audit provision that expressly

3   changes any audit terms that are present in the 1925

4   Modification, upon which Mr. Ford relied.

5          We would argue further that even the Reynolds,

6   although it doesn't contain the express audit clause, that the

7   1925 modification, where it talks about the ability to inspect

8   records, is really tied into the royalty clause.  So where the

9   2014 Reynolds modification modified that royalties clause, it

10  superseded the entire clause, it superseded the language of

11  that royalties clause and introduced a new royalties clause.

12          THE COURT:  All right.

13          Mr. Ford, at bottom, you're seeking relief in this

14  case for, among other reasons, that Antero hasn't paid your

15  clients their royalties within 60 days, which is one of the

16  provisions in the original lease, correct?

17          MR. FORD:  Your Honor, we have corresponded on these

18  issues prior to filing suit.  At the time -- certainly, we

19  demanded royalty payments, because they have been producing for

20  a year or so without paying any royalty payments.

21          So when we filed the complaint, they had not paid any

22  royalty payments.  Within 30 days of filing the complaint,

23  Antero did, it appears, pay the royalties that were owed to my

24  clients on those wells.

25          So -- so -- I -- I -- I mean, I've already expressed

1    that in our response to the motion to dismiss, that we do not

2    appear to have a significant claim for damages.  We might have

3    a claim for some interest.  But, Judge, I can't imagine that

4    being anywhere near $75,000.

5           This case is about specific performance of those

6    audit provisions in that Freeman Lease.  I've -- out of all the

7    many, many leaseholds I've analyzed over the last 10 years, and

8    the first 5 years of my career, this is probably the first one

9    where I have seen that kind of significant audit language.  And

10   all of the royalty -- and my clients, they -- they get paid on

11   a lot of other wells that Antero is producing, and we have

12   great question as to how they set that price per MCF number

13   that is reflected on those royalty statements, and from which

14   the calculations for production that match with the West

15   Virginia DEP record, with Antero -- provides to the DEP.  But

16   that's where the golden number comes and makes -- turns into

17   royalty that are part of that royalty check.

18          One other note, Your Honor, Antero did not include --

19   they only include Mr. Armstrong's -- no, they did not include

20   Mr. Armstrong's modification or the lease, that I saw.

21          THE COURT:  All right.

22          Let me remind everyone that when a case is removed,

23   the Court looks at its basis for jurisdiction as -- in the

24   snapshot of the time when the case was removed.  So to tell me

25   that subsequently there's been a royalty payment and that we're

1   really, now, only here on the audit, and you don't think this

2   case is worth $75,000, that is an argument that comes in a very

3   untimely way, and doesn't have any legs here with respect, Mr.

4   Ford.  I've got to look at this at the time that the case was

5   removed, and what the allegations were in the complaint then.

6            So let me just start through this.

7            MR. FORD:  Judge -- Judge, if I may.

8            THE COURT:  Go ahead.

9            MR. FORD:  I -- we need to do the calculation of the

10   royalty that they paid on those wells, because even that number

11   may not reach $75,000.  I have to admit, I wasn't -- I thought

12   the Court would be looking at the jurisdictional amount in

13   controversy today, as well.  I apologize for missing that.  But

14   --

15            THE COURT:  Well, yeah, you didn't raise it, Mr.

16   Ford.  So, again, I think this is too late to raise it.  And,

17   by the way, did you move to remand?

18            MR. FORD:  Well -- well...

19            THE COURT:  No.  No.  The answer is --

20            MR. FORD:  No, Your Honor, I --

21            THE COURT:  And you've got a --

22            MR. FORD:  -- did --

23            THE COURT:  -- time constraint on that, Mr. --

24            MR. FORD:  Okay.  I did raise the diversity amount

25   issue in my response to the motion to dismiss.

1          THE COURT:  Did you move to remand?

2          MR. FORD:  No, Your Honor.

3          THE COURT:  Okay.  It's too late to do that now,

4    unless it becomes obvious, at some point, that the Court has

5    lost jurisdiction, and then that would trigger your right to

6    move to remand.

7          But let me go through this, Mr. Ford.  I mean, you

8    may have a bit of buyers remorse about being in federal court

9    now, but, you know, you've got -- you're going to deal with

10   that, at least through this early stage of it.

11         The failure to complete -- to plead a complete

12   contract is a colorable argument here, but it's not going to

13   result in a dismissal of your case.  It's going to result in

14   your need to amend your complaint in order to plead the

15   subsequent modifications to the leases.  This is not a new

16   principle of law.  It's one that's been around for a long time,

17   and it's one that this Court has previously spoken to.

18         You don't mention or discuss or attach the subsequent

19   modifications to the two leases.  And I know you contend that

20   these modifications have no effect on the royalty payment and

21   document inspection provisions of the 1913 Freeman Lease and

22   the 1925 Lease Modification, but that is for me to decide,

23   isn't it, based on the motion that was filed by the defendant.

24   And I can't decide it based on what's in front of me.

25         So my ruling on this is, you have failed to allege a

1   complete contract because of the failure to mention the

2   subsequent modifications.  But I'm going to grant you leave to

3   amend your complaints, and I deny Antero's motion to dismiss on

4   this basis.

5         I will make a decision on your legal argument once I

6   have all the facts in front of me.  And I don't think it's a

7   discovery issue, as you argued earlier.  It's a pleading issue,

8   and you're going to have to go back and fix that complaint.

9   And I know we're coming up on the holidays here, so I don't

10  sense any urgency on either side's part to get this done within

11  the next 10 days.  And I will give you until the end of the

12  first week in January, or sooner, to get that amended complaint

13  filed on each of -- on behalf of each of your clients.  That

14  would be Friday, January 10th.  All right?

15        MR. FORD:  Yes, Your Honor.

16        THE COURT:  Okay.  Now, the second --

17        MR. FORD:  I'm happy to do that, Your Honor.

18        THE COURT:  The second issue is the timing of the

19  payments and right to inspect documents.  And Antero contends

20  that they have -- you contend that the lease modifications

21  don't modify or supersede the -- either the timing requirement

22  for the payment of the royalties, or the opportunity to review

23  the documentation concerning Antero's royalty.  But Antero

24  contends that there is an audit clause, which in the 2015

25  Armstrong Modification and 2014 Reynolds Modification that does

 1    modify the earlier provisions and provides a much more limited

 2    right, which is to an annual audit.

 3            I know the plaintiffs are contending that although

 4    they've been paid royalty payments now, they can still maintain

 5    a breach of contract cause of action for the untimeliness of

 6    the payments, and the failure to comply with their document

 7    requests because, again, you don't -- you contend the

 8    subsequent modifications haven't modified or eliminated the

 9    pertinent provisions of the original 1913 primary lease, and

10    the 1926 modification of that lease.

11            The argument -- if I've missed any of your argument,

12    I'm happy to hear from you further on that, Mr. Ford, if you

13    wish.

14            MR. FORD:  Oh, absolutely, Your Honor.  You're

15    talking about addressing it in amended pleadings, correct?

16            THE COURT:  Well, you can amend that, yeah.  But what

17    I'm saying is, what I have in front of me right now is, again,

18    the argument by Antero, oh, no, wait a minute, Judge.  There's

19    a big modification here, and it's material because it changes

20    the earlier opportunity that your clients might have had under

21    the original lease to obtain royalty calculations, other than

22    by an annual audit.  And now it is solely, according to Antero,

23    by an annual audit.

24            Am I correct about that, Mr. Rubenstein?

25            MR. RUBENSTEIN:  Yes, Your Honor.  And that's

 1    specific to Armstrong.  And to give the Court a little bit of

 2    flavor of what's been going on here, Antero has paid the

 3    royalties for all the wells, has paid interest for late

 4    payments under the West Virginia statute 37C-1-3.

 5              THE COURT:  Uh-huh.

 6              MR. RUBENSTEIN:  Has engaged with Mr. Ford in an

 7    attempt to satisfy his clients' demand for documents.  And we

 8    seem to be hung up a little bit on that.  But that's -- you've

 9    explained the argument well, Your Honor.  And that is a very

10    limited audit right.  And the contention is Mr. Ford's clients

11    have not complied with the provisions of that audit right.

12              Nonetheless, we have offered to try to resolve this.

13    And we tried to offer a protective order.  We haven't been able

14    to come to an agreement on that either, Your Honor.  But I

15    think you hit the nail on the head in describing it.  It's a

16    limited audit right, and contention -- Antero's contention is

17    Mr. Ford's clients did not comply with it.

18              THE COURT:  All right.  The Armstrong Modification,

19    and I think the 2014 Reynolds Modification, adopted, ratified,

20    and confirmed the 1913 Freeman Lease, significantly, quote, "as

21    amended."  And that language is specifically, "For the same

22    consideration recited above, each of the undersigned does

23    hereby adopt, ratify, and confirm the lease, as amended."

24              And my understanding from what's been argued here,

25    Mr. Ford, is that that confirms the subsequent modifications

 1    did modify the payment provision of the 1913 Freeman Lease and

 2    the document-inspection provision of the 1925 Lease

 3    Modification.

 4              What -- how do you argue -- I mean, I'm not going to

 5    -- we're at a very early stage here, and this may be a question

 6    more for summary judgment, but if it's unclear whether the 2015

 7    Armstrong and 2014 modifications modified or superseded the

 8    payment provisions of the 1913 Freeman Lease, that's a question

 9    for development during the case, as I would see it.  But, if

10    the -- if the argument is it wasn't supported by sufficient

11    consideration, that's to be developed at a later time.  I don't

12    think you're really denying there was a modification, are you?

13              MR. FORD:  Oh, Your Honor, we are not denying the

14    modification.  What we are saying -- what I'll be arguing is

15    that if Antero had -- a lease modification -- and when you read

16    the ratification paragraph at the bottom, they clearly state

17    that they are -- they are assuming all responsibilities,

18    liabilities, obligations of those original lease documents.

19    And I would think that if Antero was going to modify or change

20    those specific lease provisions, then they would have set that

21    out specifically in the modification.  That this modification

22    paragraph supersedes, in all respect, the audit paragraph of

23    the 1926 Lease.  That's our primary point, Your Honor.

24              Your Honor, I did not realize we would be in federal

25    court, because I did not think we had the damages that would

1   ever keep us there.  So I will apologize for not pulling out

2   all those other lease modifications through the assignee type.

3   We will correct that now that we are going to be in federal

4   court before you, and, certainly, if -- you know, I certainly

5   believe we can set forth a very viable cause of action on these

6   audit rights that the Freeman leaseholders have.

7           THE COURT:  Okay.  Well, I'm going to let you amended

8   the complaint, and in that amended complaint, surely you will

9   address that even though the Reynolds modifications do not

10  include a timing provision, that doesn't necessarily mean that

11  they conflict with the timing provision of the 1913 Freeman

12  Lease.  I mean, it could be that all of this could be plausibly

13  read together to require royalty payments, as set forth in the

14  2015 and 2014 modifications, under the timing set forth in the

15  1913 Freeman Lease modification.

16          But then you have this other claim about the breach

17  of contract claims based on document inspection requests, and

18  how that states a plausible claim for relief is uncertain to

19  me, because unlike the payment provisions, the document

20  inspection provisions cannot be plausibly read together.  The

21  1925 Lease Modification provides a general right to inspect

22  documents at the lessor's request.  But the 2015 and '14

23  modifications limit this right to an annual right to inspect,

24  which has to be triggered by a notice of audit, which must be

25  sent by certified mail.

1          So, I mean, I don't really see an argument there, Mr.

2   Ford, as to any ambiguity or lack of plain meaning when it

3   comes to the modification regarding document inspection, when

4   they may be inspected, and where they may be inspected.  All of

5   that is set out, isn't it?

6          MR. FORD:  I think the difference is, is -- is that

7   -- these primary lease terms were brought about by the actual

8   owners of the oil and gas rights.  And that's where our

9   clients' rights stem from.

10          THE COURT:  Well, but --

11          MR. FORD:  I think there were --

12          THE COURT:  But there were --

13          MR. FORD:  Your Honor, I'm going to have to go back

14   and analyze this.

15          THE COURT:  Okay.

16          MR. FORD:  Closely.

17          THE COURT:  All right.  You don't -- just so you

18   know, I don't think you allege that your clients sent Antero an

19   annual notice of audit by certified mail, or that Antero failed

20   to comply with that notice.

21          So, if -- you know, when you're re-pleading in your

22   amended complaint, you're going to want to look carefully as to

23   whether you can state a possible breach of contract claim based

24   on what appears to be a clear limited right of inspection.  But

25   if you're going to argue that I'm -- that that's wrong, you're

1    certainly going to have to include all the documents so that,

2    as a Court, I can take a look at all of it and determine

3    exactly what the contract is.  You can't just come in here and

4    say, well, we didn't attach any of that because we don't think

5    it matters.  It's got to be something that's going to be before

6    the Court.  And I think that would be true whether you're in

7    state court or federal court.

8            So let me say that with regard to where we are so

9    far, I'm going to grant in part and deny in part Antero's

10   motions to dismiss the plaintiffs' breach of contract claims.

11   I'm going to limit the claims to the timing of the royalty

12   payments, with the opportunity to amend the complaints to

13   allege a complete contract.  All right?  So this is all without

14   prejudice.

15           Now, let's look at West Virginia Code 37C-1-3,

16   because Antero is contending that the plaintiffs cannot state

17   an independent cause of action under that statute because that

18   statute only provides a right to interest for untimely

19   payments.  It does not create an independent cause of action.

20           I think that's a correct statement of the law, but

21   before I make a final ruling on that, Mr. Ford, did I hear you

22   state that your clients have been paid their interest?

23           MR. FORD:  I believe they have.  We just haven't --

24   it's so difficult to do the calculations from the information

25   that we have, Your Honor.

1        THE COURT:  Okay.  All right.  Let me say this --

2        MR. FORD:  But it does appear --

3        THE COURT:  All right.  Let me say -- if I can say

4   this: I would say that if you can do that calculation within

5   the next 30 or so days and find out whether you still have a

6   claim under that -- whether you think you have a claim under

7   that statute, because what I'm going to tell you is, you can't

8   file it that way.

9        The -- there is, I think, a very clear difference

10  between a statute that is silent about creating a separate

11  cause of action, and a statute that clearly recognizes and

12  intends to create a cause of action.  And we've got just that

13  kind of language in Section 37C of the code.  So we know that

14  the legislature knows how to create an independent cause of

15  action to enforce an oil and gas company's statutory

16  obligations.  It didn't do that in 37C-1-3.  But it do that in

17  37C-1-1(b).

18        So I -- my ruling, as of what I've got in front of me

19  today, is, West Virginia law does not permit an independent

20  cause of action under 37C-1-3.  So to the extent that you're

21  alleging that, rather than filing a request for certain damages

22  in conjunction with your breach of contract claim, I'm going to

23  grant Antero's motions to dismiss that particular claim in each

24  of the cases.

25        I'm not saying you can't get damages; I'm just saying

1   you can't file that as a separate cause of -- independent cause

2   of action.  Big difference.  Okay?

3           MR. FORD:  I understand, Your Honor.

4           THE COURT:  Okay.

5           MR. FORD:  It's not a problem for us.

6           THE COURT:  All right.  Thank you.  And then,

7   finally, the duty of good faith and fair dealing, which Antero

8   seeks to dismiss is, again, I think, well taken as an argument

9   here, or because West Virginia does not recognize a stand-alone

10  claim for breach of the implied covenant of good faith and fair

11  dealing.  That's, I think, part of your breach of contract

12  claim.  And I grant Antero's motion to dismiss that independent

13  claim for breach of the duty.

14          And with regard to the fiduciary duty of a lessor,

15  here again, I and other courts in this state, have concluded

16  that a fiduciary duty does not exist between the parties of an

17  oil and gas lease.  The duty created by the lease is one of

18  ordinary prudence, and not of a fiduciary.  So I will also

19  grant the motion to dismiss that claim.

20          So what you've got is, you've got your case for

21  breach of contract.  You've got to amend your complaint.  And

22  I've dismissed, with prejudice, the independent claim under the

23  statute for breach of contract for inspection of documents and

24  statutory damages, and the breach of the duty of good faith and

25  fair dealing, and the breach of the fiduciary duty.  But you

1   have 30 days to amend your complaints to allege a complete

2   contract, and to assert any related request for damages.   I

3   also deny your motion to strike.

4        I'm not going to schedule the case today.   Candidly,

5   it sounds to me like with the time you have, maybe an early

6   mediation would be in order.   Because your -- it sounds like

7   you may be halfway there, Mr. Ford.   Your clients are getting

8   their royalties, and maybe have received their interest

9   payments.   And it doesn't sound like Antero is refusing to

10  provide an audit, or allow you to have an audit, the annual

11  audit, but you haven't asked for it the right way.

12       Mr. Rubenstein, I don't want to overstate what I

13  understand from Antero, but I didn't hear you say Antero would

14  violate its legal duty under the statute or under the contract

15  to provide an audit.

16       MR. RUBENSTEIN:  You stated our position correctly,

17  Your Honor.

18       THE COURT:  Okay.  Is Antero amenable to discussing

19  this matter with Mr. Ford?

20       MR. RUBENSTEIN:  Yes, Your Honor.

21       THE COURT:  Okay.  It sounds like Mr. Ford's clients

22  are -- having not been paid their royalties on a timely basis

23  have -- got a -- you've breached their level of uncertainty and

24  discomfort, and they're not going to turn back until they get

25  to see the numbers and make sure that they're getting what

1   they're supposed to get.

2           MR. FORD:  Your Honor, that's what this case is

3   about.

4           THE COURT:  Uh-huh.

5           MR. FORD:  We anticipated that they may end up, you

6   know, paying the royalties after I filed the suit, but we never

7   know.  But, clearly, Your Honor, my clients, we want to -- we

8   want to see the information that tells us how much Antero is

9   getting paid for the gas and oil that they're producing from

10  my client.

11          THE COURT:  Okay.  Let me say this:  If you will get

12  into discussions and they look like they're bearing fruit and

13  you need some more time, but you don't want to spend it

14  amending your complaint, you can ask for an extension of the

15  deadline to file your amend complaint.  Is that amenable to

16  both sides?

17          MR. FORD:  Yes, Your Honor.

18          MR. RUBENSTEIN:  Yes, Your Honor.  And, Your Honor,

19  if I can raise one point.  We've had discussions -- much of the

20  information that Mr. Ford's clients are requesting, or would be

21  entitled to under the audit provisions, I mean, as you can

22  read, the audit provision provides that they're entitled to

23  inspect -- even under the 1925 Modification, which Mr. Ford

24  relies upon, it's a -- it's a -- it's to inspect, and it's not

25  -- not to have copies and take those copies home with them and

1   give them to their neighbors.  And that's one of the issues

2   that arise as we've tried to get an agreed protective order in

3   this case is, Mr. Ford stated that his client wanted to share

4   the information with co-tenants in the lease.  Didn't name

5   those co-tenants.  And we, obviously, don't agree with that.

6        So I would ask the Court maybe, if it deems

7   appropriate, to weigh in on that.  If the Court has a

8   protective order that it typically enters in matters like this,

9   Antero would be agreeable to that.  We proposed one, but, as I

10  said, we've not been able to an agreement on it.  And that's

11  going to be important as we discuss providing documents.

12        You know, if Mr Ford's clients aren't going to travel

13  to Antero's headquarters in Denver to inspect these documents,

14  which I don't think that they've indicated they want to do

15  that, and they want these documents provided, then we're going

16  to need some protective order in place.

17        THE COURT:  Well, Mr. Ford, I know you'll weigh in on

18  this in a minute, but it does seem advisable and in your

19  clients' interest to reach some sort of a protective order that

20  would give your clients the inspection of documents they want,

21  without incurring the expense of flying to Denver.  And, you

22  know, they may want to spread this around, but they don't

23  necessarily have a right to do that.  So you understand what

24  we're saying here.

25        MR. FORD:  Your Honor, I'll be discussing the

1  protective order with counsel for Antero a little more

2  specifically, because they're -- I don't know if you've ever

3  been exposed to the formula that Antero has for coming up with

4  that price per MCF that they put on the royalty statements.

5          THE COURT:  Oh, I have.  I have.  Trust me, I have.

6          MR. FORD:  It points to a lot of public information.

7  And I want -- I need to spend some time with counsel to

8  delineate where the line is over trade -- protected trade

9  information versus public information that thousands and

10  thousands and thousands of royalty owners should and ought to

11  have access to.

12          THE COURT:  Okay.  Now, let me just say this, because

13  it happens, that you get in a -- what looks like an ordinary

14  case and the next thing you know, you can't reach an agreement

15  for a protective order because your eyes are looking forward to

16  a possible class action or something in those lines, and I just

17  -- I will tell you, I'm going to handle this within the four

18  corners of what I have here, Mr. Ford.  And if you're looking

19  to get their work-back formula, it's available.  I know that.

20  And they'll make it available to you, according to reasonable

21  terms.  I've seen it in other litigation.

22          That's what we're talking about isn't it, Mr.

23  Rubenstein?

24          MR. RUBENSTEIN:  I believe that's right, Your Honor.

25  But, again, we've had several cases with Mr. Ford, and the

1  discovery requests can quickly become consuming and burdensome.

2  And, so, we want to -- we want to keep things reasonable within

3  the terms of the specific audit provisions --

4         THE COURT:  Yeah.

5         MR. RUBENSTEIN:  -- that we're talking about in this

6  case.

7         THE COURT:  Well, I guess, Mr. Ford, you're going to

8  have to decide whether these two plaintiffs are stalking horses

9  for some big -- potential class action, or whether you're going

10 to deal straight up with me in this case and we're going to

11 resolve it.  It sounds very much like a case that can be

12 resolved without spending a lot of your clients' time, money,

13 your energy, and that of Antero.  But if it's something more

14 than that, you'll let me know with your amended complaint,

15 won't you?

16        MR. FORD:  Oh, absolutely.  We're not interested in

17 that, Your Honor.  My clients have -- are getting -- they've

18 been getting paid substantial royalty money from Antero.  This

19 is a very important issue to them alone, not just -- well, I

20 just said that because there are lots of people in our same

21 position.

22        THE COURT:  Uh-huh.  Okay.  Well, I'll enter an order

23 that gives you till January 10th to amend the complaint and get

24 your claims clarified.  It will also summarize the rulings

25 today.  But if you want additional time before filing that

1    amended complaint because you're in settlement negotiations,

2    I'm more than happy to extend the time for that purpose.  Okay?

3              MR. FORD:  Thank you, Your Honor.

4              THE COURT:  You're welcome.

5              MR. RUBENSTEIN:  Thank you, Your Honor.

6              THE COURT:  All right.  You all have a happy

7    holidays, if I don't speak to you between now and then.

8    Bye-bye.

9    (The hearing was concluded at 3:11 P.M.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                              CERTIFICATE

 2

 3       I, Stacy Harlow, Realtime Verbatim Reporter-Master;

 4  Certified Verbatim Reporter-Master; Certificate of Merit;

 5  Registered Broadcast Captioner; Registered CART Provider, and

 6  Official Reporter of the United States District Court for the

 7  Northern District of West Virginia, do hereby certify that the

 8  foregoing is a true and correct transcript of the proceedings

 9  had in the above-styled action on December 11, 2019, as

10  reported by me by stenomask.

11       I certify that the transcript fees and format comply with

12  those prescribed by the Court and the Judicial Conference of

13  the United States.

14       Given under my hand this 29th day of April, 2020.

15                      /s/Stacy Harlow
                        _____
16                      STACY HARLOW
                        Official Reporter, United States
17                      District Court for the Northern
                        District of West Virginia

18

19

20

21

22

23

24

25
```

Stacy Harlow, RVR-M, CVR-M, CM, RCP, RBC
P.O. Box 969 Clarksburg, West Virginia  26301  304.623.7154